DAVID A. THOMPSON
STECKLOW & THOMPSON

217 CENTRE STREET, 6TH FLOOR
NEW YORK, NEW YORK 10013
TEL: (212) 566-8000
FAX: (212) 202-4952
DAVE@SCTLAW.NYC

September 10, 2015

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-11-15

BY ECF AND FAX
Honorable P. Kevin Castel
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, New York 10007
Fax: (212) 805-7949

Re: Richardson v. The City of New York, 15-cv-05775 (PKC)

Dear Honorable Judge Castel:

I represent the plaintiff in the above-captioned case. I write with a request for the Court's assistance in a matter that is time-sensitive.

The plaintiff's complaint was filed on July 22, 2015, and served on the City of New York on July 23, 2015. The plaintiff's complaint alleges that he was falsely arrested on September 17, 2012. The complaint names eleven police officers who were involved in his arrest by their badge numbers, which were obtained by reviewing video of the plaintiff's arrest. Seven other participating officers are identified as ordinary "John Doe" officers without badge numbers, because their badge numbers could not be determined from video.

Together with the complaint that was served on the defendant City of New York was a letter to Corporation Counsel Zachary Carter requesting a Rule 26(f) conference on August 14, 2015, for the limited purpose of obtaining information concerning the identities of the foregoing officers. (See Ex. A). On August 11, 2015, Assistant Corporation Counsel Andrew Lucas and I had an unplanned meeting, in which Mr. Lucas told me he had been assigned to the case. We briefly conferred about this case and my request, and Mr. Lucas agreed that the City would do what it could to identify the officers. Mr. Lucas and I discussed the fact that it was important to obtain this information before September 17, 2015, so that the Complaint could be amended to reflect these officers' names within the statute of limitations.[1]

---

[1] Naming these officers after September 17, 2015 is not foreclosed, pursuant to *Hogan v. Fischer*, 738 F.3d 509, 518-519 (2nd Cir. 2013), but doing so involves differing standards and, presumably, formal motion practice.

---

*[Handwritten memo endorsement:]* Plaintiff's letter was faxed to Chambers at 4 pm on a Thursday. Monday is a religious holiday. Plaintiff's counsel must raised the issue with the City on August 11 and needs to have the Court force response or an accelerated basis. I will order counsel for defendants to respond by 2 pm on September 16, 2015.

SO ORDERED
[signature] USDJ
9-10-15

Mr. Lucas asked for some supplemental information, including the videos and still images which I used to obtain the officer badge numbers and other identifying information. I provided that promptly. I checked in with Mr. Lucas several times, but I have not yet received any identifications of any officers. Nor have I received a representation that this information would be provided within the statute of limitations period.

I have no reason to doubt that Mr. Lucas has made good faith efforts to obtain this information. However, I also do not believe that the NYPD is unable, within the duration of a month, to learn the identities of officers who have been identified by shield number, especially when such officers' assigned unit is also known. To the contrary, to the best of my knowledge such information is easily accessible in the computerized personnel records maintained by the NYPD Personnel Division. Therefore I conclude that despite Mr. Lucas' efforts, the NYPD simply has not looked in its own files for the names that correspond to these badge numbers.[2]

In my experience litigating many police misconduct cases, when the NYPD is not responsive to its own counsel's requests, a court order is necessary to induce the bureaucratic client to focus on the issue at hand and comply. For this reason I request that this Court issue and order directing the City of New York to identify these individuals no later than 10:00 AM on September 17, 2015.

I emailed Mr. Lucas yesterday and spoke to Mr. Lucas briefly today in an interval of a trial that he is conducting, and then called the attorney he instructed me to communicate with concerning this issue, Ms. Joy Anakhu. I informed Ms. Anakhu via voice mail that I would be filing this letter to seek Court assistance by the end of the day in the absence of concrete information concerning when these officers' identities would be provided. In good faith, I don't believe that the factual background stated in this letter is subject to dispute, and I don't believe that counsel for defendants would dispute that the City agreed to make reasonable/best efforts to identify these officers. The City may wish to dispute the need for, or scope of, an order of the Court; however, because there is little time before the September 17th statute of limitations date, and because the issue at hand is relatively simple, I respectfully request that the Court direct the City of New York to respond to this letter quickly, so that the Court may review and decide this request on an expedited basis.

Respectfully submitted,

David Thompson

---

[2] With respect to officers whose badge numbers are unknown, their identities would be recorded in duty roster assignment sheets, roll calls, or similar documents, maintained by the School Safety Division. To the best of my knowledge, obtaining this information is not a complex process, but requires a different and higher level of effort and time than determining the identities of officers known by their shield numbers.

# Exhibit A

# DAVID A. THOMPSON
# STECKLOW & THOMPSON

217 CENTRE STREET, 6TH FLOOR
NEW YORK, NEW YORK 10013
TEL: (212) 566-8000
FAX: (212) 202-4952
DAVE@SCTLAW.NYC

July 23, 2015

Zachary Carter
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

Re: Luke Richardson v. The City of New York, 15-cv-05775 (PKC)

Dear Mr. Carter:

My name is David Thompson and I am counsel for Luke Richardson, the plaintiff in the above-mentioned matter. I write to inform you that Mr. Richardson has filed a lawsuit against the City of New York and various officers from the New York City Police Department ("NYPD") for deprivation of his civil rights, which occurred during an incident that took place on September 17, 2012 in lower Manhattan. Enclosed with this letter is copy of the summons and complaint.

I write to you to request a Fed. R. Civ. P. 26(f) conference on August 14, 2015. The plaintiff has named many of the defendant police officers as John Does, because their identifies are not known to the plaintiff. The statute of limitations for the plaintiff's claims runs on September 17, 2015, and, for this reason, I would like meet with defendants' counsel on August 14, 2015 to facilitate the identification of these individuals. I seek this conference now, so that these individuals may be identified and named before the statute of limitations.

I believe it should be relatively easy for the defendants to identify the John Does listed in the complaint. Plaintiff has listed the badge numbers for the majority of the John Does. It is my understanding that the NYPD Personnel Division maintains records of all employees in the department that allow for identification based on badge numbers. To facilitate identification, photographs of the officers involved have been annexed to the complaint as Exhibits A through U.

In regard to those John Doe defendants for whom the plaintiff does not have a badge number, I believe there is still enough information currently known about these individuals to identify them with little difficulty. The majority of the defendant police officers that participated in the incident were part of two squads comprised of a sergeant and 8 police officers. These two squads appear to have been drawn the NYPD School Safety Division. The police unit from which these squads were dispatched to the detail would maintain records, such as roll calls and detail assignment rosters, which would permit identification of these officers. The remaining officers were probably part of a third squad supervised by the defendant lieutenant. The plaintiff attached pictures of the individual officers will enable confirmation of the officers' identity.

Additionally, due to the fact that the plaintiff has identified and named NYPD Captain Mark Iocco, and Captain Iocco personally supervised many of the officers that participated in the

1

incident on September 17, 2012, I believe that Captain Iocco will be able to access documents or other information that will enable you to identify the John Doe officers.

If you are unable or refuse to have a 26(f) conference on August 14, 2015 or reasonable alternative date, I will ask the court to issue an a Fed. R. Civ. P. 26(d)(1) order directing the City of New York to provide limited discovery into the identities of these John Doe defendants. I hope that, given the limited nature of the discovery sought, we can work together to avoid the necessity of motion practice.

I am available to discuss any issues you may have in your efforts to comply with my request.

Sincerely,

David A. Thompson

2

# Exhibit B

# DAVID A. THOMPSON
# STECKLOW & THOMPSON

217 Centre Street, 6th Floor
New York, New York 10013
Tel: (212) 566-8000
Fax: (212) 202-4952
DAVE@SCTLAW.NYC

August 11, 2015

**BY FEDEX GROUND**
Andrew Lucas, Esq.
Assistant Corporation Counsel
100 Church Street
New York, N.Y. 10007

Re: <u>Richardson v. The City of New York</u>, 15-cv-05775 (PKC)

Dear Andrew:

Thank you for taking the time to discuss this case with me today, and thank you for your courteous agreement to determine the identities of "John Doe" police officers, as requested in my July 23, 2015 letter to Zachary Carter (a copy of which is enclosed). In that letter, I requested a Rule 26(f) conference to be held on August 14th in order to confer on these identities. Because we have already begun the conferral process, I don't believe a formal conference is required. I anticipate that we will confer by phone as needed. As you indicated, you are aware that the statute of limitations on these claims is September 17, 2015, and that the information should be obtained before that date. With this in mind, please let me know if you meet difficulties obtaining the information from the NYPD, as soon as such difficulties arise, so that we can address and resolve such difficulties together.

As discussed, enclosed please find a USB drive containing the video that I used to determine, with as much precision as possible, the identities of the involved officers. In the majority of cases, I was able to determine the badge numbers of the involved officers. In this letter, I will summarize the contents of the USB, and explain how these images relate to the "John Doe" defendants named in the complaint.

The folder called "0 -- People on Luke" contains a selection of images that show some, but not all, of the officers most immediately involved in the plaintiff's arrest. These images are included primarily for reference purposes. However, please note that the defendant named as "Squad 2 Sunglasses Officer" appears to be closely involved in the arrest. Unfortunately, I was not able to obtain a badge number for this officer from the video. However, I request that you obtain the roster or roll call for Squad 2, from which it should be possible to identify him.

As set forth in both the complaint, and my July 23, 2015 letter, from review of the enclosed video it appears that the plaintiff's arrest was performed by a group of police officers who were part of three squads, supervised by a Lieutenant (named as "John Does Squads Lieutenant"). The first two squads, Squad 1 and Squad 2, appear to have consisted of one sergeant and seven to eight police officers. The third squad appears to have consisted of a sergeant (named as "John Doe Third Sergeant," although actually female), and may have had less than a full complement of police officers. The Sergeant had an assistant (named as "NYPD 'John Doe' Assistant Officer to Third Sergeant"), and may also have supervised "John Doe Cap-Wearing Officer" and "NYPD Officer 'John Doe' Shield No. 1361." All of the foregoing were under the on-scene supervision of Captain Iocco and "NYPD 'John Doe' Second Captain."

The folder called "1 – Squad 1 - Luke Arrest Team" contains still images of the officers in Squad 1. The sub-folder called "Squad in File" is a sequence of images that show the Squad 1 officers in line following their sergeant to the location of their deployment. The sequence of images shows that there were seven police officers in Squad 1, in addition to their sergeant, "Squad 1 Sergeant." The members of Squad 1 are identified in paragraphs 15 through 23 of the Complaint. There is a subfolder of images for each of the officers whose badge numbers I was able to determine from video, containing the screenshots in which the badge number is visible.[1] The subfolder name is the same as the badge number. In several images, it is possible to see that the officers were wearing label pins identifying them as "School Safety" officers. See, for example, the image "Screen Shot 2015-07-02 at 4.37.20 PM," in the folder for officer 3680. Finally, please note that one member of Squad 1, the officer whose badge number was 10074, was one of the principal arresting officers of the plaintiff.

The folder called "2 – Squad 2 - Luke Arrest Team," contains still images of the officers in Squad 2. The sub-folder called "Squad in File" is a sequence of images that show the Squad 2 officers in line following their sergeant to the location of their deployment. The sequence of images shows that there were seven police officers in Squad 1, in addition to their sergeant, "Squad 2 Sergeant." The members of Squad 2 are identified in paragraphs 24 through 31 of the Complaint. As before, there is a subfolder for each officer with a badge number. These officers also appear to be wearing "School Safety" lapel pins. See, for example, the image: "Screen Shot 2015-07-02 at 4.33.02 PM," within the folder for Squad 2 Sunglasses Officer. In addition, please note that Squad 2 Sergeant was one of the principal arresting officers of the plaintiff. His badge number is 3558.

---

[1] Most of these images are screen shots from the video that show the time in the video at which the screenshot was taken.

The folder called "3 – Squad 3" contains still images of the officers in Squad 3. The officers identified with Squad 3 are identified in paragraphs 35 through 37 of the complaint. It is not possible to determine from the video whether Squad 3 consisted of the usual complement of seven officers to one sergeant. These officers appear not to have come from the School Safety Division. Officer 384 is wearing a lapel pin that appears to be a pin for a precinct. It may be a three number precinct ending in 0. See "Screen Shot 2015-07-02 at 5.13.09 PM" in the folder 384.

The folder "4 – Lieutenant - Squads 1 2 3" contains images of the defendant identified in paragraph 32 of the complaint.

The folder "5 – Captain Iocco" contains images of Captain Iocco. These are included primarily to show that Captain Iocco had a direct on-scene supervisory role, and may be a source of information that could identify these officers.

The folder "6 – Captain 2" contains images of the individual identified in paragraph 34 of the complaint.

The folder "7 – Mustache whiteshirt" contains images of an additional supervisory officer who is shown on-scene before the arrest. He is not named in the complaint, but could be a source of information if he is recognized.

The folder "8 – Deputy Inspector" contains images of an additional supervisory officer, apparently a deputy inspector, who is shown on-scene after the arrest. He is not named in the complaint, but could be a source of information if he is recognized.

The folder "9 – Other Whiteshirt" contains images of an additional supervisory officer, who is shown on-scene around the time of the arrest. He is not named in the complaint, but could be a source of information if he is recognized.

In closing, I'd like to say that I sincerely appreciate your cooperation. Please don't hesitate to let me know in what way I can reciprocate.

Sincerely,

David Thompson