USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12-23-15

**MEMO ENDORSED**

~~DAVID A. THOMPSON~~

## STECKLOW & THOMPSON

217 CENTRE STREET, 6TH FLOOR
NEW YORK, NEW YORK 10013
TEL: (212) 566-8000
FAX: (212) 202-4952
DAVE@SCTLAW.NYC

*[Handwritten annotation: Defendants are free to make their motion provided it is filed by January 29, 2016. Plaintiff's response is due Feb 26, 2016. Any reply is due March 10, 2016. Any prior conference date is vacated. Discovery is stayed. SO ORDERED /s/ PKC USDJ 12-22-15]*

December 16, 2015

By ECF
Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   Richardson v. The City of New York, et al., 15 cv 5775 (PKC)

Dear Honorable Judge Castel:

I write on behalf of the plaintiff in response to the defendants' pre-motion letter concerning a proposed Rule 12(b)(6) motion. The defendants' proposed motion has no factual or legal basis. The gravamen of the defendants' argument for dismissal of the plaintiff's false arrest claim is that the plaintiff was required not merely to plead the plaintiff's cause of action, but to plead the non-existence of the defendants' affirmative defense of probable cause. The law is otherwise. A warrantless arrest is "presumptively unlawful." *Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27, 29 (2d Cir. N.Y. 2011) (citing *Guntlow v. Barbera*, 907 N.Y.S.2d 86, 90 (N.Y. App. Div. 3d Dep't 2010)). "When an arrest is not made pursuant to a judicial warrant, the **defendant** in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. N.Y. 2010) (emphasis added) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)). *See also BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014) (holding that defendants cannot obtain 12(b)(6) dismissal for plaintiff's 'failure' to negate an affirmative defense in the complaint).

The Supreme Court in Iqbal (*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)) did not modify the elements of any cause of action, burdens of proof, or legal presumptions. To the contrary, where there is a legal presumption in favor of the plaintiff, it "reduces the facts needed to be pleaded under Iqbal." *Dawson v. New York City Transit Auth.*, 2015 U.S. App. LEXIS 16445 (2d Cir. N.Y. Sept. 16, 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. N.Y. 2015)). Because a warrantless arrest "presumptively unlawful," the plaintiff need not plead a negation of the defendants' affirmative defense of probable cause.

The City presents Iqbal as an invitation to courts to make credibility determinations based on the pleadings under the rubric of "plausibility." Since courts are not permitted to make such determinations even on summary judgment, it is perforce not their province to do so on the pleadings. Indeed, the Supreme Court gave a narrow and technical definition of "plausibility" in Iqbal: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In assessing "factual content," a court may

disregard "conclusory" allegations,[1] except as a means of providing a "framework" for a complaint. *Id.* at 1950. However, for non-conclusory allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949. The non-conclusory factual allegations "need not be sufficient to make it likely that the plaintiff would prevail on the merits if she proved those allegations to be true." *Dawson*, 2015 U.S. App. LEXIS 16445, fn. 1. Finally, good pleading "does not require detailed factual allegations." *Id.* at 1949.

In part, the defendants' proposed motion is based on a misstatement of the facts alleged in the complaint. For example, the defendants state, "Plaintiff has not denied ... that officers were issuing dispersal orders," but the text of the Amended Complaint is quite clear: "Despite issuing **no order to disperse**, Defendant POLICE OFFICERS then arrested Plaintiff..." (Am. Compl. ¶ 2) (emphasis added). In part, the defendants' arguments are based on unsupported allegations that belong in an Answer or a 56.1 statement -- not in a motion to dismiss on the pleadings. *See Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (holding that questions regarding affirmative defenses that "require[] consideration of facts outside of the complaint" are "inappropriate to resolve on a motion to dismiss."). For example, the defendants state that "Plaintiff cannot in good faith deny ... that protestors were blocking sidewalks in that area." The plaintiff can, in fact, deny that allegation in good faith, but with respect to a Rule 12(b)(6) motion it only matters that the allegation appears nowhere in the pleading.

Some of the defendants' averments in support of their motion are simply baffling. The defendants argue: "[P]laintiff has admitted that he was reunited with a group of protestors prior to his arrest on a day when individuals gathered throughout the City." To put it bluntly, so what? Protesting is not illegal, not even "on a day when individuals gathered throughout the City." A jury could believe the defendants' statement to be true, and still bring a verdict for the plaintiff.

Looking at what the complaint actually says, it states facts -- susceptible to direct proof by testimony or evidence and therefore <u>non-</u>conclusory -- which are more than sufficient to state a claim. The plaintiff was on a public sidewalk, which is a place where citizens are generally permitted to be. (Am. Compl. ¶ 2). His purpose in being there was to commemorate the one-year anniversary of the Occupy Wall Street movement, which is a lawful purpose. (Am. Compl. ¶ 2). There was no warrant for the plaintiff's arrest. (Am. Compl. ¶ 109). The plaintiff was arrested without warning, and no order to disburse made to him. (Am. Compl. ¶ 2, 80). The New York County District Attorney's office declined to prosecute the charges against Plaintiff. (Am. Compl. ¶ 99).

With respect to the affirmative defense of qualified immunity, the defendants do not make any substantial argument concerning why they would be entitled to claim it. The defendants simply aver that "Plaintiff's bare allegations are insufficient to" [sic], without finishing the sentence or the thought. This is probably because there is no thought to finish. The police must be expected to know that it is unlawful to perform a warrantless arrest on a person standing on a public sidewalk who is breaking no law. If the defendants wish to establish entitlement to qualified immunity, they will have to do it by establishing different facts than those stated in the complaint. To do this, the defendants must await summary judgment or trial.

---

[1] A "conclusory" fact is a fact that cannot be proven true or false without reference to some other predicate fact.

The defendants raise a half-formed issue regarding the number of defendants. The defendants state: "[The plaintiff] only alleges that eight defendants had any direct involvement in his arrest, but has named thirty one defendants." There were a large number of police officers in the **immediate** vicinity of the plaintiff when he was arrested, and a large number of them participated directly in the plaintiff's arrest. However, in this pre-discovery posture it has not been possible to determine with certainty which officers placed hands on the plaintiff, and which are guilty only of failure to intervene in the plaintiff's unlawful arrest.[2]

I have tried to engage with the defendants, beginning on September 22, 2015, to eliminate from the case those defendants whose sole potential liability would be under a theory of failure to intervene. On that date, I wrote an email to Mr. Lucas, stating:

> I see in the video [of the incident] that there was a TARU [video] officer on scene -- possibly Det. McDonald. From what I can see, his video might have had a better view of the arrest than the video I have. If you can get me that video between now and the initial conference, I would be happy to go over it and use it to identify those non-commanding officers currently named in the case whose sole liability is failure to intervene, and dismiss them from the case.

Mr. Lucas responded that he was looking into the footage shot by Det. McDonald, and asked me to explain my willingness to dismiss defendants from the case. I replied:

> Failure to intervene is a legitimate and well established cause of action. That said, I would prefer to focus the case on defendants whose potential liability arises from Constitutionally forbidden action, rather than inaction.

I followed up on this at some point in October, I believe in a phone call, but I haven't received the police video from the defendants. To the extent the defendants are seeking to move for dismissal of defendants whose sole liability is failure to intervene, I fail to see why it is necessary to waste my time and that of the Court with motion practice, when the same goal can be accomplished by cooperation between the plaintiff and defendants.

The defendants' argument with respect to the plaintiff's claim for excessive force is that the plaintiff's injuries aren't severe enough to sustain a claim. Generally, there is no requirement to plead damages with particularity. The three-factor analysis of Graham v. Connor, 490 U.S. 386, 395 (1989), which the Second Circuit recently reminded courts is "required," does not include injury as a factor. See Brown v. City of New York, 798 F.3d 94, 102 (2d Cir. N.Y. 2015) (reversing dismissal of excessive force claim). The Courts below in Graham applied a four factor test that included the extent of the injury as a factor (see Graham, 490 U.S. at 390-393), which

---

[2] Multiple officers can be held liable for a single arrest. See, e.g., Jackson v. City of New York, 939 F. Supp. 2d 219 (E.D.N.Y. 2013). A particular officer who was not the "arresting" officer still faces liability if he assisted in the arrest in some fashion. See Mack v. Town of Wallkill, 253 F. Supp. 2d 552, 558 (S.D.N.Y. 2003) ("[A] non arresting officer directly involved in the arrest of plaintiff could be liable for false arrest."). In addition, police officers face liability for failure to intervene to prevent a constitutional violation that occurs in their presence. See O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988). Personal involvement is neither an element of, nor a requirement for, a claim for failure to intervene. See Garnett v. City of New York, 2014 U.S. Dist. LEXIS 112440 (S.D.N.Y. Aug. 13, 2014) (citing, inter alia, Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

was dropped from the Supreme Court's final formulation of the test. *See Graham*, 490 U.S. at 395. In Brown, the plaintiff's excessive force claim was based on being forced to the ground and pepper sprayed, resulting in no medical treatment and no lasting injury, and the Second Circuit reversed dismissal of the claim. The Second Circuit has also indicated that where a person is arrested for disorderly conduct, the reasonable amount of force pursuant to the Graham factors is low. *See Weather v. City of Mt. Vernon*, 474 Fed. Appx. 821, 823 (2d Cir. N.Y. 2012) (affirming plaintiff verdict where police twisted plaintiff's arm and slammed him into wall).

The defendants' argument for the dismissal of the plaintiff's Monell claim is bare-bones and requires little response at this time. While it is true that no Monell claim lies in the absence of a Constitutional violation, the defendants cannot establish the absence of a Constitutional violation on the pleadings, for the reasons discussed above. Apart from this, the defendants cite only an unpublished decision upon a motion to dismiss in which the plaintiff submitted no opposition (Cuevas v. City of New York, No. 07-cv-4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *12 (S.D.N.Y. Dec. 7, 2009)), implying that Mr. Richardson's complaint, like the one Cuevas, is composed only of "conclusory allegations." Nothing could be further than the truth. The plaintiff's complaint sets forth 20 pages of non-conclusory facts, many of them referenced to reputable third party sources, and some derived directly from testimony of police officers and records maintained by the police and the District Attorney's office. The defendants will not be able to establish entitlement to dismissal of the plaintiff's Monell claim on the pleadings.

This Court's local rules require that the plaintiff "unambiguously state whether it seeks leave to amend." The defendant's letter is generally lacking in specific, accurate statements of law and fact. The defendants' letter has not placed the plaintiff on notice of any specific legal or factual deficiency in the pleadings which requires amendment. If the defendants later provide specifics that disclose a deficiency that can be remedied by amendment, the plaintiff hopes the Court will consider any proposed amendment on its merits.

The plaintiff is willing to amend the complaint to eliminate defendants whom it can be shown have no liability beyond failure to intervene. This willingness to amend is expressly contingent on the defendants' cooperation in providing the information necessary to identify such defendants. It may be, furthermore, that elimination of such failure-to-intervene defendants will have to be a process that takes place over time between now and summary judgment, as information in discovery clarifies the role of each individual.

The defendants have requested an extended briefing schedule because of an alleged concern that some individual defendants have not been served. Such delay is unnecessary. As of today, all but three individuals have been served. The delay in service is traceable in large part to the failure of the City of New York to provide accurate information concerning the business address of these City employees on a timely basis (see docket no. 51).[3] To the extent this is a problem at all, it would go away if the City provided the information I requested more than two months ago, or, if these three defendants simply accepted service by stipulation.

Respectfully submitted,

David Thompson

---

[3] By custom, police officers are not served at their homes, because the affidavits evidencing service, containing the officers' home addresses, would be placed on a public docket, raising security concerns.