UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

LUKE RICHARDSON,

                      Plaintiff,

           -against-

THE CITY OF NEW YORK, a municipal entity,
FORMER NYPD COMMISIONER RAY KELLY,
FORMER MAYOR MICHAEL BLOOMBERG,
FORMER NYPD CHIEF OF PATROL JOSEPH ESPOSITO,
NYPD ASSISTANT CHIEF THOMAS P. PURTELL,
NYPD DEPUTY CHIEF STEVEN ANGER,
NYPD DEPUTY CHIEF JAMES MCNAMARA,
NYPD CAPTAIN MARK IOCCO,
NYPD OFFICER IVAN BAUTISTA (SHIELD NO. 10074),
NYPD OFFICER NELSON FRIAS (SHIELD NO. 4054),
NYPD OFFICER HALIMA SMITH (SHIELD NO. 3680),
NYPD OFFICER EVERETT REYES (SHIELD NO. 14434),
NYPD OFFICER DAVID SCOTT (SHIELD NO. 8533),
NYPD OFFICER CHARLES CAREY (SHIELD NO. 1361),
NYPD "JOHN DOE" SQUAD 1 SERGEANT,
NYPD OFFICER RAYMUNDO FLETE (SHIELD NO. 14271),
NYPD OFFICER VALLISON ISAAC (SHIELD NO. 1647),
NYPD OFFICER "JOHN DOE" SQUAD 1 OFFICER 1,
NYPD OFFICER "JOHN DOE" SQUAD 1 OFFICER 2,
NYPD OFFICER "JOHN DOE" SQUAD 1 OFFICER 3,
SERGEANT CARLETON SUDDLER, NYPD OFFICER REGINA
VAILES (SHIELD NO. 4132),
NYPD OFFICER LUVEN GILBERT-FIGUEROA (SHIELD NO.
9189),
 NYPD OFFICER VITO CAMPANELLI (SHIELD NO. 31604),
 NYPD OFFICER CHAO LI (SHIELD NO. 28060),
NYPD OFFICER "JOHN DOE" SQUAD 2 OFFICER,
NYPD OFFICER "JOHN DOE" SQUADS LIEUTENANT,
NYPD OFFICER "JOHN DOE" SECOND CAPTAIN,
NYPD OFFICER "JOHN DOE" THIRD SERGEANT,
DET. SOLOMON CHINNERY,
NYPD "JOHN DOE" CAP WEARING OFFICER,

                   Defendants.

------------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S
MOTION TO DISMISS**

15 CV 5775 (PKC)

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................................... - 1 -

STATEMENT OF FACTS ................................................................................................................ - 1 -

ARGUMENT ..................................................................................................................................... - 5 -

    POINT I ....................................................................................................................................... - 5 -

      **PLAINTIFF'S FALSE ARREST CLAIMS FAIL** ......................................................... - 5 -

    POINT II ...................................................................................................................................... - 9 -

      **PLAINTIFF'S EXCESSIVE FORCE CLAIMS FAIL** ............................................... - 9 -

    POINT III .................................................................................................................................. - 13 -

      **PLAINTIFF'S DEPRIVATION OF CIVIL RIGHTS CLAIMS FAIL** ................... - 13 -

    POINT IV .................................................................................................................................. - 17 -

      **PLAINTIFF'S FAILURE TO INTERVENE CLAIMS FAIL** ................................. - 17 -

    POINT V .................................................................................................................................... - 20 -

      **PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST ANY OF THE REMAINING "EXECUTIVE" AND/OR "CHIEF" DEFENDANTS** ............................................ - 20 -

    POINT VI .................................................................................................................................. - 20 -

      **PLAINTIFF'S MONELL CLAIMS FAIL** .................................................................. - 20 -

    **CONCLUSION** .................................................................................................................... - 26 -

# TABLE OF AUTHORITIES

## Cases

Acosta v. City of New York, 2012 U.S. Dist. LEXIS 60460 at 29-30 (S.D.N.Y. Apr. 26, 2012)..........- 10 -

Adams v. City of New Haven, 2015 U.S. Dist. LEXIS 46061 at *11 (D. Conn. Apr. 8, 2015).............- 25 -

Adkins v. City of New York, 2015 U.S. Dist. LEXIS 154204 at 4 (S.D.N.Y. Nov. 15, 2015).............- 11 -

Akinnagbe v. City of New York, 2015 U.S. Dist. LEXIS 141646 at 3-6 (E.D.N.Y. Oct. 18, 2015)........- 9 -

Albright v. Oliver, 510 U.S. 266, 273 (1994) ..................................................................- 14 -

Am. v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004) .......................................- 25 -

Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)........................................................- 19 -

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)....................................................... - 5 -, - 9 -, - 16 -

Askins v. City of New York, 2012 U.S. Dist. LEXIS 19940 (S.D.N.Y. Feb. 14, 2012) ................- 6 -, - 7 -

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).......................................... - 5 -, - 9 -, - 18 -

Bertuglia v. City of New York, 2015 U.S. Dist. LEXIS 131008 at *114 (S.D.N.Y. Sept. 28, 2015) ....- 24 -

Board of the County Comm'rs v. Brown, 520 U.S. 397, 403-404 (1997).....................................- 20 -, - 24 -

Boley v. Durets, 2013 U.S. Dist. LEXIS 177862 at 27-28 (E.D.N.Y. Dec. 10, 2013) ................- 10 -, - 12 -

Bouche v. City of Mount Vernon, 2012 U.S. Dist. LEXIS 40246 at 24-25 (S.D.N.Y. Mar. 22, 2012) .- 18 -

Bowen v. Patrick, 2014 U.S. Dist. LEXIS 106708 at *17 (S.D.N.Y. Aug. 4, 2014).............................- 19 -

Brown v. City of New York, 2014 U.S. Dist. LEXIS 83513 at 28 (S.D.N.Y. June 18, 2014) .....- 15 -, - 16 -

Burroughs v. Petrone, 2015 U.S. Dist. LEXIS 142732 at 45 (N.D.N.Y Oct. 15, 2015)........................- 11 -

Cadwallader v. Devlin, 2016 U.S. Dist. LEXIS 1409 at 36 (N.D.N.Y Jan. 7, 2016) ...............................- 8 -

Cicio v. Lamora, 2010 U.S. Dist. LEXIS 28779 at 25 (N.D.N.Y Feb. 24, 2010)...................................- 13 -

City of Canton v. Harris, 489 U.S. 378, 395 (1989) ........................................ - 23 -, - 25 -, - 26 -

City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) .................................................................- 16 -

Clay v. County of Clinton, 2012 U.S. Dist. LEXIS 139262 at 46-47 (N.D.N.Y Sept. 27, 2012)...........- 18 -

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).................................................................- 6 -

Colvin v. State Univ. College at Farmingdale, 2014 U.S. Dist. LEXIS 85678 at 66-67 (E.D.N.Y. June 19,
     2014)..........................................................................................................- 16 -

Connick v. Thompson, 563 U.S. 51, 61 (2011) ................................................ - 21 -, - 23 -, - 24 -

Corsini v. Bloomberg, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014) ........................................- 11 -

Cruz v. City of New York, 2016 U.S. Dist. LEXIS 6116 at *8 (S.D.N.Y. Jan. 19, 2016) ....................- 23 -

Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)..................................................- 15 -

Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001).............................................................- 15 -

Demosthene v. City of New York, 2015 U.S. Dist. LEXIS 114902 at 30 (E.D.N.Y. June 26, 2015)....- 13 -

Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) ................................- 14 -, - 16 -

Dunkelberger v. Dunkelberger, 2015 U.S. Dist. LEXIS 133814 at (S.D.N.Y. Sept. 30, 2015) .............- 11 -

Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)....................................................- 8 -, - 26 -

Evans v. City of New York, 2015 U.S. Dist. LEXIS 38546 at *126-27 (E.D.N.Y. Feb. 24, 2015) .......- 19 -

Fahs Constr. Group v. Gray, 725 F.3d 289, 291-92 (2d Cir.).................................................- 14 -

Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).................................................................- 5 -

Garcia v. Doe, 764 F.3d 170, 191 .................................................................................- 8 -

Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014) ............................................................- 8 -, - 9 -

Gersbacher v. City of New York, 2015 U.S. Dist. LEXIS 129994 at 24 (S.D.N.Y. Sept. 25, 2015) ..... - 11 -

Gojcaj v. City of Danbury, 2016 U.S. Dist. LEXIS 696 at *44-47 (D. Conn. Jan. 5, 2016) ................. - 25 -

Gonzalez v. City of New York, 2015 U.S. Dist. LEXIS 151810 at 22 (S.D.N.Y. Nov. 9, 2015) .......... - 11 -

Graham v. Connor, 490 U.S. 386, 395 (1989) ................................................................................. - 14 -

Guo Hua Ke v. Morton, 2012 U.S. Dist. LEXIS 141848 at 34 (S.D.N.Y. Sept. 28, 2012) ................... - 10 -

Hart v. City of Binghamton, 2012 U.S. Dist. LEXIS 61508 at *24 (N.D.N.Y May 2, 2012) ............... - 24 -

Hewitt v. City of New York, 2011 U.S. Dist. LEXIS 11479 at 4-5 (E.D.N.Y. Feb. 7, 2011) ................. - 6 -

Hewitt v. City of New York, 2012 U.S. Dist. LEXIS 141067 at 34 (E.D.N.Y. Sept. 27, 2012) ............ - 18 -

Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227 at 15 (S.D.N.Y. May 12, 2015) - 11 -, - 23 -

Hunter v. City of New York, 35 F. Supp. 3d 310, 326 (E.D.N.Y. 2014) ................................................. - 26 -

Inesti v. Hogan, 2013 U.S. Dist. LEXIS 29549 at 53-55 & n.25 (S.D.N.Y. Mar. 5, 2013) ................... - 15 -

Jackson v. City of New York, 939 F.Supp.2d 219, 231 (E.D.N.Y. April 11, 2013) ............................... - 11 -

Jackson v. City of White Plains, 2015 U.S. Dist. LEXIS 104476 at 19, (S.D.N.Y. Aug. 7, 2015) ......... - 19 -

Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 543 (S.D.N.Y. 2015) ..................................... - 24 -

Lacertosa v. Blackman Plumbing Supply Co., 2013 U.S. Dist. LEXIS 98772 at 12 (E.D.N.Y. July 12, 2013) ............................................................................................................................................ - 13 -

Leibovitz v. City of New York, 2015 U.S. Dist. LEXIS 170476 at *65 (S.D.N.Y. Dec. 18, 2015) ....... - 19 -

Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) .......................................................................... - 7 -

Lozada v. City of New York, 2013 U.S. Dist. LEXIS 105682 at *20-21 (E.D.N.Y. July 26, 2013) ..... - 24 -

Mayzick v. County of Nassau, 32 F. Supp. 3d 399, 402-403 (E.D.N.Y. 2014) ........................................ - 6 -

Milo v. City of New York, 59 F. Supp. 3d 513, 527 (E.D.N.Y. 2014) .................................................... - 12 -

Mittelman v. County of Rockland, 2013 U.S. Dist. LEXIS 46382 at 35-37 (S.D.N.Y. Mar. 26, 2013) - 12 -

Monell v. Department of Soc. Serv., 436 U.S. 658 (1978) ...................................................................... - 20 -

Morris v. City of New York, 2015 U.S. Dist. LEXIS 54550 (E.D.N.Y. Apr. 27, 2015) ........................ - 19 -

National Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012)…. ............................................................................................................................................ - 13 -

Okin v. Village of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 440-41 (2d Cir. 2009) .............. - 26 -

Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) .......................................................................... - 7 -

Parkash v. Town of Southeast, 2011 U.S. Dist. LEXIS 128545 at 21-22 (S.D.N.Y. Sept. 30, 2011) .... - 17 -

Phelps v. City of New York, 2006 U.S. Dist. LEXIS 42926 (S.D.N.Y. June 27, 2006) ................. - 6 -, - 7 -

Pizarro v. City of New York, 2015 U.S. Dist. LEXIS 131471 at *29 (E.D.N.Y. Sept. 29, 2015) .......... - 25 -

Reynolds v. Giuliani, 506 F.3d 183, 193 (2d Cir. 2007) ....................................................................... - 21 -

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) ..................................................... - 19 -

Schultz v. Amick, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) .............................................................. - 13 -

Schultz v. Village of Bellport, 479 Fed. Appx. 358, 360 (2d Cir. 2012) ............................................... - 22 -

Schweitzer v. Crofton, 560 Fed. Appx. 6, 10 (2d Cir. 2014) ................................................................. - 22 -

Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ............................................................... - 22 -

Sethi v. Nassau County, 2014 U.S. Dist. LEXIS 77069 at 18-19 (E.D.N.Y. June 3, 2014) .................... - 9 -

Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) .............................................................. - 8 -

Simms v. City of New York, 2011 U.S. Dist. LEXIS 115949 at *9 (E.D.N.Y. Sept. 28, 2011) .. - 24 -, - 25 -

Simms v. City of New York, 480 Fed. Appx. 627 (2d Cir. N.Y. 2012) ................................................... - 24 -

Spence v. Washington, 418 U.S. 405, 410-11 (1974) ............................................................................. - 16 -

<u>Texas v. Johnson</u>, 491 U.S. 397, 404 (1989) ......................................................................- 16 -

<u>Triano v. Town of Harrison</u>, 895 F. Supp. 2d 526, 536-37 (S.D.N.Y. 2012) .........................- 24 -

<u>Van Dunk v. Brower</u>, 2009 U.S. Dist. LEXIS 21832 at 40 (S.D.N.Y. Mar. 12, 2009) .......................- 17 -

<u>Vializ v. Crespo</u>, 2012 U.S. Dist. LEXIS 178448 at 5 (D. Conn. Dec. 18, 2012) .................................- 10 -

<u>Waddlington v. City of New York</u>, 971 F. Supp. 2d 286, 297 (E.D.N.Y. 2013)...................................- 18 -

<u>Walczyk v. Rio</u>, 496 F.3d 139, 163 (2d Cir. 2007)...............................................................- 8 -

<u>Wilson v. City of New York</u>, 2010 U.S. Dist. LEXIS 92871 (E.D.N.Y. Sept. 3, 2010) .......................- 19 -

<u>Wims v. New York City Police Dep't</u>, 2011 U.S. Dist. LEXIS 78641 at 15 (S.D.N.Y. July 20, 2011) - 10 -

<u>Wood v. Moss</u>, 134 S. Ct. 2056, 2066-67 (2014) ...........................................................- 8 -

<u>Wray v. City of New York</u>, 490 F.3d 189, 196 (2d Cir. 2007)...................................................- 21 -, - 25 -

<u>Yorzinski v. Imbert</u>, 39 F. Supp. 3d 218, 228 (D. Conn. 2014)..............................................- 6 -

<u>Young v. City of Providence</u>, 404 F.3d 4, 27 (1st Cir. 2005) ..............................................- 21 -

<u>Zalaski v. City of Hartford</u>, 723 F.3d 382, 390 (2d Cir. 2013) ..............................................- 8 -

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................................- 9 -

## PRELIMINARY STATEMENT

Plaintiff Luke Richardson brings this action against the City of New York, former Mayor Michael Bloomberg, former Police Commissioner Raymond Kelly, and 28 named and unnamed members (past and present) of the New York City Police Department ("NYPD") for their alleged mistreatment of plaintiff during his attempt to "celebrate" the one-year anniversary reunion of the Occupy Wall Street ("OWS") gatherings in lower Manhattan on September 17, 2012.   See Amended Complaint ¶¶ 7-45 & 65-66, attached to the Declaration of Joy T. Anakhu as Exhibit A.

## STATEMENT OF FACTS

In pertinent part,[1] plaintiff alleges that he was standing on the sidewalk in front of or near 28 Broadway on the morning of September 17, 2012. Id. ¶¶ 2 & 69. Plaintiff asserts that he "and other bystanders" were struck in the back by police officers holding batons. Id. ¶¶ 2 & 80. Though plaintiff initially states that there was no order to disperse, Id. ¶ 2, he subsequently admits that the NYPD in fact issued such an order. Id. ¶ 213. Plaintiff makes various allegations against several named individuals.

### Claims Against Captain Iocco

Plaintiff claims that Captain Iocco: (1) "grabbed plaintiff by the strap of his messenger bag and dragged him through a crowd of defendant police officers", Id. ¶ 81 (emphasis omitted); (2) "transferred custody of plaintiff to NYPD officer Ivan Bautista [and] defendant Sergeant Carleton Suddler", Id. ¶ 82 (emphasis omitted); (3) "caused plaintiff to be arrested Id. ¶ 83 (emphasis omitted); and (4) "ordered the arrest of Plaintiff knowing that the Plaintiff did not

---

[1]  Plaintiff includes extensive allegations, seemingly lifted from OWS public relations literature, outlining the various OWS grievances and recounting alleged police atrocities after the 2011 invasion and seizure of Zuccotti Park by the "movement" in 2011.  See Amended Complaint ¶¶ 47-68   These allegations, which primarily deride the bank "aid" program – are irrelevant to the present motion and, in large part, the entire case.

commit any violation or offense." Id. ¶ 95

### Claims Against Officer Ivan Bautista and Sergeant Carleton Suddler

Plaintiff claims that both officers: (1) "caused Plaintiff to be arrested", Id. ¶ 83; (2) one or both "placed plastic flex-cuffs tightly around Plaintiff's wrists, causing pain then numbness to Plaintiff's hands and wrists", Id. ¶¶ 86-87; and that (3) Bautista agreed to loosen said flex-cuffs after plaintiff "notif[ied Bautista] of current pain then numbness" and of a nerve injury "from a previous incident involving flex-cuffs", but failed to do so after Bautista apparently became distracted with the task of "load[in] more people onto the police bus with Plaintiff." Id. ¶¶ 88-92.

### Claims Against Officer Regina Vailes, Officer David Scott, Officer Halima Smith, Officer Chao Li  and "Second Captain"

Plaintiff claims that these officers, "directly participated in the plaintiff's arrest by grabbing him and/or pushing him." Id. ¶ 84.

### Claims against John Doe Squad 1 Sergeant, Officer Nelson Frias, Officer Raymundo Flete, Officer Vallison Isaac, Officer John Doe (Squad 1 Officer 1), Officer John Doe (Squad 1 Officer 2), Officer John Doe (Squad 1 Officer 3), Officer Everett Reyes, Officer Luven Gilbert-Figueroa, Officer Vito Campanelli, Officer Jane Doe (Squad 2 Officer), John Doe Squads Lieutenant, John Doe Second Captain, John Doe Third Sergeant, Det. Solomon Chinnery, Officer John Doe (Cap-Wearing Officer) and Officer Charles Carey

Plaintiff claims that the above officers were, "present, and . . . close enough to intervene in the plaintiff's arrest [but] failed to do so." Id. ¶ 85.

### Claims Against Mayor Michael Bloomberg, Police Commissioner Raymond Kelly, Chief of Patrol  Joseph Esposito, Assistant Chief Purtell, Deputy Chief James McNamara and Deputy Chief Steven Anger[2]

---

[2]  Plaintiff also confusingly and inconsistently defines what he calls the "Executive" and "Chief Defendants".  Compare Id. ¶ 16 with ¶ 79.  Ultimately, it is unnecessary to sort out the allegations against these defendants because plaintiff fails to state a claim against any of them in their individual capacities as a result of his failure to allege personal involvement.  See Point V,

Plaintiff makes no allegations for these individual defendants in the factual background section of the Amended Complaint other than those purporting to set forth their basic job-related duties (generally and/or with respect to "NYPD policing of [OWS] activities"), see Id. ¶¶ 10-16. The officer defendants listed above are alleged to have been "under the command" of Purtell, McNamara and Anger, who constitute all or only three of the "Chief Defendants", Id. ¶ 79.

### Remaining Claims

Otherwise, plaintiff broadly claims that "[t]he defendant officers were deployed in and around the area that the plaintiff met with . . . others [from OWS]", Id. ¶ 70, sets forth what he claims was the general command structure for NYPD's deployment that day, Id. ¶¶ 71-79, and asserts that "defendant police officers . . . [w]ithout warning . . . struck plaintiff from behind, grasping their batons between both hands and shoving plaintiff in the back" and "caused Plaintiff to be arrested".  Id. ¶¶ 80 & 83 (emphasis omitted).  Plaintiff alleges he was arrested for and charged with "disorderly conduct" and detained for 13 hours, even though he "did not engage in disorderly conduct, or any other violation or crime".[3] Id. ¶¶ 93, 94 & 97.

Plaintiff also provides extensive Monell allegations in an attempt to disguise the fact that they are without substance.   The recurring theme here is the attempt to link the original OWS occupation, which lasted a month and included the occupation of a privately-owned public space

---

infra.   Otherwise, the rambling allegations against them address only policy issues and necessarily fall along with plaintiff's Monell claims.  See Point VI, infra.

[3]  Plaintiff alleges that the New York County District Attorney's office declined to prosecute him. Id. ¶ 99.  He also alleges that "[u]pon release from jail, [he] did discover a photograph of his arrest was used on the front page of CNN.com, next to a picture of Mitt Romney." Id. ¶ 98.  It is unclear whether plaintiff is bragging, laying the foundation for a claim against CNN, or suggesting that the former Massachusetts governor and presidential candidate was arrested and/or released from jail along with plaintiff.

("OWS I"), and the subsequent anniversary celebration that involved plaintiff and lasted one day ("OWS II").  Plaintiff alleges that 15% of the disorderly conduct arrests during OWS I & II resulted in prosecution and conviction.[4]  See Amended Complaint ¶¶ 130-36 & 150.  He makes no attempt to differentiate between OWS I & II, only the latter of which relates to plaintiff's lawsuit.   Rather, he bemoans (without elaboration) "ineffective" police practices and "[u]nlawful arrests" at both events.  Id. ¶¶ 139-40.  He discusses at length (using hearsay sources, such as the *New York Times*) the supposedly illegal arrest practices during OWS I, and asserts that the NYPD made no policy changes between the two events, including "no training further training . . .  in protestors' [sic] rights".  Id. ¶¶ 141-49.  He cites the "voluminous litigation" relating to OWS I & II as "proof of the improper policing" at both events.[5]  Id. ¶¶ 151-54.

Plaintiff generally asserts the City, acting through the "Executive Defendants", knew or should have known that they would encounter protests, such as OWS I, and that its officers would commit widespread constitutional violations, but "took no steps, through training, supervision, or policy, to correct [such] harmful and unlawful practices".  Id. ¶¶ 159-65.  Plaintiff then provides a list of broad principles governing mass outdoor protests that he claims are grounded in First Amendment jurisprudence.   He asserts that "[p]roper training in these clearly-established principles of lawful police conduct would have prevented unlawful arrests of the plaintiff on September 17, 2012".  Id. ¶ 171.  Plaintiff fails, however, to indicate how these alleged failures led to his own arrest.  He admits that the NYPD in fact trained on these issues

---

[4]  Plaintiff reaches the legally unsupported conclusion that the other 85% "had not done anything wrong".  Amended Complaint ¶¶ 137.

[5]   In a further attempt to link OWS I & II, plaintiff quotes extensively from the "Suppressing Protest" commentary, which was authored months before plaintiff's incident and related exclusively to OWS I.  See note 8, *infra*; Amended Complaint ¶¶ 155-58.

during the six-month Police Academy training, Id. ¶ 172, and acknowledges an August 2011 training specifically geared towards OWS-type protests, but vaguely faults the training for "not includ[ing] any training about proper policing of expressive speech activity protected by the First Amendment".[6] Id. ¶ 175.

## ARGUMENT

### POINT I

### PLAINTIFF'S FALSE ARREST CLAIMS FAIL

In his Second Claim for Relief, plaintiff claims (without elaboration), that he was "arrested . . . without probable cause" by the defendants Iocco, Bautista, Suddler, Vailes, Scott, Smith, Li and "Second Captain". Id. ¶¶ 109-10. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007): "Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 570 (a complaint must include sufficient facts to state a claim that is *plausible*, not merely *conceivable*).

**Officers Vailes, Scott, Smith, Li and "Second Captain"**.  With respect to these officers, plaintiff alleges only that they were present at some point, "grabbing him and/or

---

[6] As if his Amended Complaint is not sufficiently prolix already, plaintiff repeats his earlier allegations about what City policymakers knew or should have known about the upcoming OWS "protest" and how they failed to implement measures to prevent "unlawful arrests" and the NYPD supervisory structure for OWS II.  See Amended Complaint ¶¶ 177-210.  Plaintiff concludes his Monell rant with more anecdotal information regarding OWS II arrests, the policy decision of the New York District Attorney ("DANY") to avoid fulfilling its obligation to prosecute the arrestees, more blanket assertions about NYPD's alleged failure to train its officers "in the proper policing of constitutionally protected activity", additional boilerplate Monell allegations that add nothing to plaintiff's already overstated yet substantively slender case, and plaintiff's interesting admission (contrary to what he alleged earlier) that a dispersal order in fact had been given by NYPD.  See Id.¶¶ 211-24.

pushing him".  See Amended Complaint ¶ 84.  Such allegations are insufficient to support a false arrest claim.  See, e.g., Mayzick v. County of Nassau, 32 F. Supp. 3d 399, 402-403 (E.D.N.Y. 2014) (merely stating that plaintiff was falsely arrested by the defendants and was deprived of liberty as a result insufficient to withstand a motion to dismiss under Iqbal); Yorzinski v. Imbert, 39 F. Supp. 3d 218, 228 (D. Conn. 2014) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) and holding that an allegation that the defendant officer arrested plaintiff "along with" another officer was insufficient to state a Fourth Amendment violation even if the arrest by the fellow officer was wrongful); Hewitt v. City of New York, 2011 U.S. Dist. LEXIS 11479 at 4-5 (E.D.N.Y. Feb. 7, 2011) (that defendant officers merely "participated" in an arrest insufficient to sustain a false arrest claim).

**Officers Bautista and Suddler**  With respect to Officers Bautista and Suddler, plaintiff alleges only that custody of plaintiff was transferred to them by Captain Iocco, who was the officer who "caused" and "ordered" plaintiff's arrest.  Based on these allegations, Bautista and Suddler at least are entitled to qualified immunity.  Askins v. City of New York, 2012 U.S. Dist. LEXIS 19940 (S.D.N.Y. Feb. 14, 2012), aff'd, 727 F.3d 248 (2d Cir. 2013) and Phelps v. City of New York, 2006 U.S. Dist. LEXIS 42926 (S.D.N.Y. June 27, 2006) are instructive on this point. In Askins, the arresting officer was not present and had no knowledge of the basis for plaintiff's arrest, which the court assumed, *arguendo*, was unlawful.  Rather, the officer relied on his sergeant's statement that the plaintiff had trespassed and was in possession of contraband.  The officer then placed the plaintiff under arrest pursuant to the sergeant's instruction to do so.  2012 U.S. Dist. LEXIS 19940 at 13-14.  The court held that the officer was entitled to qualified immunity because there was no basis for him to conclude that the plaintiff was not trespassing, even if what the sergeant told him in fact was false.  Id. at 17-18.

Similarly, in Phelps, an officer (Krutys) arrived on the scene after the plaintiff has been

chased and apprehended by two other officers.   Krutys was instructed by one of the two officers at the scene to place the plaintiff under arrest for disorderly conduct and resisting arrest.   The court held that even though there was a factual dispute whether probable cause in fact existed for plaintiff's arrest, plaintiff's false arrest claim should be dismissed pursuant to the  collective knowledge doctrine.   Phelps, 2006 U.S. Dist. LEXIS 42926 at 9-10; see also Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir. 2002) ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.")); Askins, 2012 U.S. Dist. LEXIS 19940 at 19-20 (discussing Phelps).

The same reasoning applies to Officers Bautista and Suddler.   According to plaintiff, Bautista and Suddler merely cuffed plaintiff and put him in the van for transport to the precinct after Iocco transferred custody of plaintiff to them – i.e., after Iocco allegedly "grabbed plaintiff by the strap of his messenger bag and dragged him through a crowd of defendant police officers". See Amended Complaint ¶¶ 81-83, 86-87 & 95 (emphasis omitted).   As with the officers in Askins and Phelps, neither Bautista nor Suddler had a basis to believe that probable cause for plaintiff's arrest was absent.   Accordingly, Bautista and Suddler at least are entitled to qualified immunity.

**Captain Iocco and (Alternatively) All Other Police Officers**.   With respect to Captain Iocco – and indeed any defendant police officer – plaintiff's false arrest claim fails *ab initio*. Plaintiff's false arrest theory is based on the failure of the NYPD to issue a dispersal order prior to his arrest.[7]   See Amended Complaint ¶ 2.   However, plaintiff successfully shoots down his

---

[7]  Plaintiff alleges only that he was arrested for "disorderly conduct".   Amended Complaint ¶ 93. Penal Law § 240.20(6) provides that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [h]e congregates with other persons in a public place and refuses to comply with a lawful order of the

own theory in paragraph 213 of the Amended Complaint when he admits that such an order in fact was given.  See Amended Complaint ¶ 213.  Accordingly, plaintiff has failed to allege that probable cause for his disorderly conduct arrest was absent.  See, e.g., Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (noting that probable cause to arrest for disorderly conduct exists where the arrestee violates an order to disperse, and that the officer's motivation, including remarks by the arrestee, is irrelevant to the validity of the arrest).

Alternatively, Iocco and the other defendant police officers are entitled to qualified immunity.  An arresting officer is entitled to qualified immunity where "arguable probable cause" to arrest exists.  Zalaski v. City of Hartford, 723 F.3d 382, 390 (2d Cir. 2013); Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).  Such arguable probable cause is present where "it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met".  Zalaski, 723 F.3d at 390; Escalera, 361 F.3d at 743 (internal quotation marks omitted); accord Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007).  A plaintiff is required to plead sufficient facts showing that qualified immunity would not be available.  See Wood v. Moss, 134 S. Ct. 2056, 2066-67 (2014); accord Garcia v. Doe, 764 F.3d 170, 191 (Livingstion, J., dissenting), reh'g granted and withdrawn, 774 F.3d 168, amended by, 779 F.3d 84 (2d Cir. 2014); Cadwallader v. Devlin, 2016 U.S. Dist. LEXIS 1409 at 36 (N.D.N.Y Jan. 7, 2016) (further noting that "[t]o survive a motion to dismiss based on qualified immunity, a plaintiff must plead facts sufficient to meet the *Iqbal* plausibility standard"); see also Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014) (noting "that qualified immunity can be established by the facts alleged in a complaint" and "should be resolved when possible on a motion to dismiss . . . to avoid subjecting public officials to time consuming and expensive discovery procedures" (citations omitted).  In the present case,

police to disperse".

plaintiff has failed to allege a factual basis to conclude that it was objectively unreasonable for Iocco and other arresting defendants (if any) to believe that the dispersal order was unlawful. See Akinnagbe v. City of New York, 2015 U.S. Dist. LEXIS 141646 at 3-6 (E.D.N.Y. Oct. 18, 2015).  To the extent plaintiff will assert that the dispersal order was "unlawful" because he did not hear it, see Garcia, 779 F.3d at 93-94 & 96, or that it was in retaliation for his alleged First Amendment activity, see Point III, *infra*, such claim(s) would be without merit.

## POINT II

### PLAINTIFF'S EXCESSIVE FORCE CLAIMS FAIL

In this claim for relief, plaintiff alleges only that he was "grabbed, pushed, pulled and shoved" by the following defendants:  Iocco, Bautista, Suddler, Vailes, Scott, Smith, Li and "Second Captain".  Amended Complaint ¶ 115.  He states that he "was caused to suffer personal injuries", but does not say specifically what injuries resulted from the grabbing, pushing, pulling and/or shoving or indicate whether he required any medical treatment.  See Id. ¶ 116.

**Officers Vailes, Scott, Smith, Li and "Second Captain"**.  With respect to Officers Vailes, Scott, Smith, Li and "Second Captain", no other excessive force allegation against them appears in the complaint.  See Id. ¶ 84 (merely indicating that these officers "directly participated in the plaintiff's arrest by grabbing him and/or pushing him").  Plaintiff does not provide even the slightest factual detail beyond the generic for any of these five officers (individually or collectively).  Such bald allegations do not advance an excessive force claim beyond the merely conceivable.  Twombly, 550 U.S. at 570; see also Iqbal, 556 U.S. at 679 (where a court can infer no more than a "mere possibility of misconduct", the complaint not shown that the plaintiff is entitled to relief within the meaning of Fed. R. Civ. P. 8(a)(2)).

Furthermore, force not resulting in injuries cannot be considered excessive under the

Fourth Amendment.  <u>Sethi v. Nassau County</u>, 2014 U.S. Dist. LEXIS 77069 at 18-19 (E.D.N.Y. June 3, 2014) (citing cases); <u>Vializ v. Crespo</u>, 2012 U.S. Dist. LEXIS 178448 at 5 (D. Conn. Dec. 18, 2012) ("If the complaint merely alleged that the plaintiff had been 'pushed,' it would be insufficient to state a claim for excessive force."); <u>Guo Hua Ke v. Morton</u>, 2012 U.S. Dist. LEXIS 141848 at 34 (S.D.N.Y. Sept. 28, 2012) (allegation that law enforcement personnel "shoved aside" plaintiff insufficient to state an excessive force claim).  Plaintiff's conclusory allegation that he "was caused to suffer personal injuries", Amended Complaint ¶ 116, is insufficient.  <u>E.g.</u>, <u>Boley v. Durets</u>, 2013 U.S. Dist. LEXIS 177862 at 27-28 (E.D.N.Y. Dec. 10, 2013) (mere assertions of "physical injuries" and "serious permanent personal injuries of body and mind" arising out of "forceful contact" insufficient to state an excessive force claim without specific allegations of the type of injuries suffered).

**Captain Iocco**.  The same pleading flaw also applies to the allegations against Captain Iocco, who is alleged to have dragged plaintiff by the strap of his messenger bag.  Amended Complaint ¶ 81.  These allegations do not rise to the level of a viable excessive force claim.  <u>See Wims v. New York City Police Dep't</u>, 2011 U.S. Dist. LEXIS 78641 at *15 (S.D.N.Y. July 20, 2011) (claim by plaintiff that he was "thrown flat on [his] face unto the filthy ground" insufficient to state an excessive force claim in the absence of any assertion that the alleged conduct "resulted in any specific or identifiable physical or mental injury and harm beyond a conclusory assertion"); <u>accord</u> <u>Acosta v. City of New York</u>, 2012 U.S. Dist. LEXIS 60460 at 29-30 (S.D.N.Y. Apr. 26, 2012) (allegations of force by arresting officer, including being "punched . . . in the chest [and thrown] to the ground face first", not excessive where plaintiff failed to allege specific or identifiable physical or mental harm beyond conclusory assertions that he "was injured" and "suffered emotional and physical damages").

**Officers Bautista and Suddler**.  Plaintiff's excessive force claims against Officers

Bautista and Suddler similarly fail, as there is no excessive force claim against them above and beyond plaintiff being "grabbed, pushed, pulled and shoved" by those officers.  See Amended Complaint ¶¶ 113-17.  Assuming the Court would grant plaintiff leave to amend his complaint (again) to include a tight-handcuffs claim, such an amendment would be futile.  "District courts in this Circuit reflect a consensus that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising."  Gonzalez v. City of New York, 2015 U.S. Dist. LEXIS 151810 at 22 (S.D.N.Y. Nov. 9, 2015); accord Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227 at *15 (S.D.N.Y. May 12, 2015); Dunkelberger v. Dunkelberger, 2015 U.S. Dist. LEXIS 133814 at (S.D.N.Y. Sept. 30, 2015); see also Burroughs v. Petrone, 2015 U.S. Dist. LEXIS 142732 at *45 (N.D.N.Y Oct. 15, 2015) (citing Jackson v. City of New York, 939 F.Supp.2d 219, 231 (E.D.N.Y. April 11, 2013): "To sufficiently plead an excessive force claim based upon tight handcuffing, the plaintiff must allege more than a temporary injury.").  Furthermore, as with any excessive force claim, mere allegations of physical injury from tight handcuffs without further details about the alleged injury are insufficient.  E.g., Corsini v. Bloomberg, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014), aff'd in part and appeal dismissed in part, 613 Fed. Appx. 1 (2d Cir. 2015).

Plaintiff alleges that his handcuffs were fastened "tightly around [his] wrists, causing pain then numbness to [his] hands and wrists", which may have lasted up to one hour.  Amended Complaint ¶¶ 86 & 92.  These allegations do not state a claim for excessive force.  See, e.g., Corsini, 26 F. Supp. 3d at 243 (excessive force handcuff claim dismissed where "[p]laintiff . . . alleged merely that he complained that the handcuffs were too tight and that he suffered 'physical injury,' without specifying any factual content about the injury"); Adkins v. City of New York, 2015 U.S. Dist. LEXIS 154204 at 4 (S.D.N.Y. Nov. 15, 2015) (handcuffing causing "soreness in [plaintiff's] arm and shoulder lasting approximately one week" insufficient to state

an excessive force claim); <u>Gersbacher v. City of New York</u>, 2015 U.S. Dist. LEXIS 129994 at 24 (S.D.N.Y. Sept. 25, 2015) (excessive force handcuff claim dismissed where plaintiff "allege[d] that the handcuffs were too tight and that the NYPD officers repeatedly ignored his requests that they be loosened", but plaintiff's injuries were limited to "cuts and bruises on his wrists were the flexi-cuffs were fastened"); <u>Milo v. City of New York</u>, 59 F. Supp. 3d 513, 527 (E.D.N.Y. 2014) (excessive force handcuff claim dismissed where plaintiff "alleg[ed] that handcuffs were tightly secured and that police officers refused to loosen them despite her request that they do so" but failed to allege "a continuing injury beyond temporary discomfort"); <u>Boley</u>, 2013 U.S. Dist. LEXIS 177862 at 26 (excessive force handcuff claim dismissed where plaintiff alleged "that the handcuffs were tight enough to cause 'extreme anguish and pain,' and that defendants ignored his request to loosen the handcuffs" but failed to "plead[] any lasting physical injury to his wrists beyond pain during the incident").

Plaintiff's artful allegation that he "suffered nerve damage in his hands and wrists from a *previous incident* involving flex-cuffs", Amended Complaint ¶ 88 (emphasis added), may state a claim against the person(s) involved in that previous incident, but not against Officers Bautista and/or Suddler.[8]  <u>See</u> <u>Mittelman v. County of Rockland</u>, 2013 U.S. Dist. LEXIS 46382 at 35-37 (S.D.N.Y. Mar. 26, 2013) (dismissing a "tight handcuffs" excessive force claim where plaintiff failed to plead a specific or identifiable injury allegedly sustained as a result of being handcuffed apart from his conclusory allegations that the handcuffing caused him "great pain" because of a pre-existing medical condition).

Finally, plaintiff admits that Officer Bautista agreed to loosen his handcuffs but neglected to do so when he apparently became distracted by the task of loading more arrestees into the

---

[8]  Defendant notes that Officer Suddler is not alleged to have been privy to plaintiff's handcuff grievance in any event.  <u>See</u> Amended Complaint ¶¶ 89-91.

police bus.  Such "inattention or inadvertence" does not rise to the level of culpability necessary to support an excessive force claim.  See Cicio v. Lamora, 2010 U.S. Dist. LEXIS 28779 at 25 (N.D.N.Y Feb. 24, 2010) (failure-to-intervene claim; citing Schultz v. Amick, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) (excessive force claim)), adopted by, 2010 U.S. Dist. LEXIS 28771 (N.D.N.Y Mar. 22, 2010); accord Demosthene v. City of New York, 2015 U.S. Dist. LEXIS 114902 at 30 (E.D.N.Y. June 26, 2015), adopted by, 2015 U.S. Dist. LEXIS 114655 (E.D.N.Y. Aug. 28, 2015).

## POINT III

### PLAINTIFF'S DEPRIVATION OF CIVIL RIGHTS CLAIMS FAIL

It is hard to say whether plaintiff's First Claim for Relief is an inarticulate legal rant or merely a collection of vague allegations culled at random from a book of boilerplate section 1983 allegations.  Plaintiff does not even bother to state which defendants were responsible for this unspecified conduct.  See Amended Complaint ¶¶ 100-07.  This fails to state any claim or cause of action.  See, e.g., Lacertosa v. Blackman Plumbing Supply Co., 2013 U.S. Dist. LEXIS 98772 at 12 (E.D.N.Y. July 12, 2013)  (noting that a court need not liberally construe a complaint where plaintiff was represented by counsel at the time of filing), aff'd, 582 Fed. Appx. 43 (2d Cir. 2014), cert. denied, 136 S. Ct. 138 (2015); National Gear & Piston, Inc. v. Cummins Power Sys., LLC, 861 F. Supp. 2d 344, 370 (S.D.N.Y. 2012) (same).  Be that as it may, defendants nevertheless will attempt to articulate plaintiff's claim(s) in order to more quickly dispose of these unnecessary and/or unavailing allegations to advance the disposition of this matter.

With respect to the "factual" allegations, all that can be deciphered from plaintiff's assemblage is that the individual defendants: (1) acted in their capacities as police officers under

color of state law, Amended Complaint ¶¶ 101 & 103-04; (2) acted pursuant to the customs, usages, practices, procedures and rules of the City and the NYPD, Id. ¶¶ 104-05; (3) were supervised by the ranking officers of the NYPD, Id. ¶ 104-05; and (4) deprived plaintiff of his rights under the First, Fourth, and Fourteenth Amendments to the Constitution, Id. ¶¶ 102 & 105-06, causing plaintiff harm for which he seeks redress.  Id. ¶¶ 106-07.

Plaintiff already is advancing Fourth Amendment claims in his Second and Third Claims for relief (discussed above).  Therefore, the boilerplate allegations here add nothing.

Regarding the Fourteenth Amendment, there is no indication that plaintiff is claiming he was denied equal protection.  The Amended Complaint contains no allegation of differential treatment.  See, e.g., Fahs Constr. Group v. Gray, 725 F.3d 289, 291-92 (2d Cir.), cert. denied, 134 S. Ct. 831 (2013).  Neither does plaintiff appear to be alleging a due process violation distinct from this Fourth Amendment claims.  See Graham v. Connor, 490 U.S. 386, 395 (1989) (claims grounded in specific constitutional provisions cannot be maintained separately as substantive due process claims); accord Albright v. Oliver, 510 U.S. 266, 273 (1994).  Defendants and the Court should not be required to guess.

That leaves only a First Amendment claim, which presumably is based on plaintiff's brief and conclusory allegation at the beginning of the complaint that the "Defendant police officers . . . arrested Plaintiff . . . in retaliation for Plaintiff's protected activity".  Amended Complaint ¶ 2 (emphasis omitted).  "To plead a First Amendment retaliation claim a plaintiff must show:  (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury.[9]  Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (citing Curley v.

---

[9]  To the extent plaintiff is advancing a First Amendment "chilling effect" claim, see Amended Complaint ¶¶ 155-58, he also must establish that defendants' actions effectively chilled the

Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)).  To survive a motion to dismiss, plaintiff

must advance non-conclusory allegations establishing each of these elements.  E.g., Dawes v.

Walker, 239 F.3d 489, 492 (2d Cir. 2001).

Plaintiff alleges that it was Captain Iocco who "caused and "ordered" plaintiff's arrest.

Amended Complaint ¶¶ 83 & 95.  No other defendant is alleged to have had personal

involvement in the decision to arrest plaintiff.  Accordingly, plaintiff has failed to state a First

Amendment retaliation claim against these officers.  See Inesti v. Hogan, 2013 U.S. Dist. LEXIS

29549 at *53-55 & n.25 (S.D.N.Y. Mar. 5, 2013) (citing cases), adopted by, 2013 U.S. Dist.

LEXIS 141041 (S.D.N.Y. Sept. 30, 2013).

Assuming, arguendo, that Iocco "caused" and/or "ordered" plaintiff's arrest, absent is

any allegation that plaintiff was engaged in any "protected activity" and/or that his arrest was

motivated by any such activity.  Plaintiff merely alleges that he and other "bystanders" were

"standing on the sidewalk" "commemorating" and "celebrating" the one-year anniversary of the

OWS event.[10]  Amended Complaint ¶¶ 2, 66 & 69.  Plaintiff incorrectly assumes, it would

appear, that his conduct on the morning in question automatically can be linked to the First

Amendment merely by invoking the then year-old OWS I "protest".  See Brown v. City of New

---

subsequent exercise of plaintiff's First Amendment rights.  See Curley v. Village of Suffern, 268
F.3d 65, 73 (2d Cir. 2001) (citing Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998); accord
Howard v. Town of Bethel, 481 F. Supp. 2d 295, 309 (S.D.N.Y. 2007).  Plaintiff fails to allege
such a chill.  Defendants suspect he cannot.

[10]   Plaintiff also quotes several passages from a result-oriented and admittedly one-sided
commentary authored and/or "researched" by a variety of law school clinics, whose métier
appears to be exposing the pervasive social, legal, monetary injustice and incompetence that
exist in modern American society.  See Amended Complaint ¶¶ 155-58.  Apart from the fact that
the excerpts, consistent with the source document, are double-hearsay, the commentary addresses
the original occupation in 2011 (not the 2012 OWS anniversary "celebration", which provides
the backdrop for plaintiff's law enforcement experience).  Moreover, plaintiff does not (and
indeed cannot) provide any causal connection between the referenced anecdotal anthology and
his particular circumstances (other than, it appears, the use of tight handcuffs that hurt his
wrists).

York, 2014 U.S. Dist. LEXIS 83513 at *28 (S.D.N.Y. June 18, 2014) (rejecting as "mere argument and speculation" plaintiff's argument that First Amendment retaliation can be inferred by a "close temporal proximity" to the OWS demonstration), aff'd in relevant part, 798 F.3d 94, 104 (2d Cir. 2015).  As alleged, plaintiff's conduct is as consistent with a pub-crawl or a New Year's Eve celebration than a gathering to advance a political or social agenda.  See Texas v. Johnson, 491 U.S. 397, 404 (1989) (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974) ("In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'"); City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) ("It is possible to find some kernel of expression in almost every activity a person undertakes . . . but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.").

In any event, even if plaintiff could allege more than a kernel of expression in his actions on the morning in question, there is no indication in the Amended Complaint that Iocco's actions (or any other defendant's actions) were motivated or substantially caused by such expression. See, e.g., Dorsett, 732 F.3d at 160.  In conclusory fashion, plaintiff merely alleges that his arrest *must* have been in retaliation of his "protected activity".  Such allegations are insufficient to establish the required causal connection.  See Colvin v. State Univ. College at Farmingdale, 2014 U.S. Dist. LEXIS 85678 at *66-67 (E.D.N.Y. June 19, 2014) (quoting Iqbal, 556 U.S. at 679 and holding that an assertion that the adverse governmental action "could only be in retaliation for First Amendment . . . activities . . . are conclusory and 'not entitled to the assumption of truth'"); Brown, 2014 U.S. Dist. LEXIS 83513 at *28-29 (plaintiff, who was arrested based on the refusal to disperse, required to show that his arrests were "motivated or substantially caused" by the

alleged exercise of his First Amendment rights; "close temporal proximity" to OWS demonstration "mere argument and speculation"); <u>Van Dunk v. Brower</u>, 2009 U.S. Dist. LEXIS 21832 at *40 (S.D.N.Y. Mar. 12, 2009) (plaintiff's mere conclusion "that Defendants' actions were in retaliation to his public complaints" insufficient to support a causal connection between his protected speech and the alleged retaliation).

To the extent plaintiff wishes to hang his hat on the "expressed dissatisfaction with the violent actions of defendant police officers", Amended Complaint ¶ 2, the same lack of a causal connection exists. Assuming plaintiff expressed such dissatisfaction, there is no allegation that Iocco (or any other defendant) heard any such utterances and/or acted because of them.[11] In any event, any alleged causal connection fails because the expressed dissatisfaction with the actions of the police occurred only *after* the police initiated the process of arresting the bystanders. <u>See</u> <u>Parkash v. Town of Southeast</u>, 2011 U.S. Dist. LEXIS 128545 at *21-22 (S.D.N.Y. Sept. 30, 2011) ("At the most basic level, defendants' allegedly retaliatory actions must occur later in time than plaintiffs' protected speech."), <u>aff'd</u>, 468 Fed. Appx. 80 (2d Cir. 2012).

## POINT IV

### PLAINTIFF'S FAILURE TO INTERVENE CLAIMS FAIL

Plaintiff broadly alleges that "Defendant Police Officers had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights [but] chose not to intervene . . . despite having had realistic opportunities to do so." Amended Complaint ¶¶ 119-20 (emphasis omitted).

As an initial matter, plaintiff does not seek to maintain this claim against the so-called

---

[11] Plaintiff cannot rely on expressions by others to support a retaliatory arrest against him, as plaintiff has no standing to advance such a claim. <u>See</u> <u>Lewis v. City of New York</u>, 591 Fed. Appx. 21, 23 (2d Cir. 2015).

"Executive" or "Chief Defendants" (by definition), see Id. ¶ 42, nor any of the defendants who participated in his arrest (by implication).  See Id. ¶¶ 83-85.  Plaintiff could not assert such claim even if he wanted to because, as discussed *infra*, none of the "Executive" or "Chief Defendants" were present for plaintiff's arrest and any arresting officers who were present cannot be subject to a derivate failure-to-intervene claim.

That leaves 17 police officers[12] who are alleged to have been "present, and . . . close enough to intervene in the plaintiff's arrest [but] failed to do so".  Amended Complaint ¶ 85.  On its face, this "unadorned, the-defendant-unlawfully-harmed-me accusation", see Twombly, 550 U.S. at 555 (2007), fails as a matter of law.  See Bouche v. City of Mount Vernon, 2012 U.S. Dist. LEXIS 40246 at *24-25 (S.D.N.Y. Mar. 22, 2012) (dismissing a failure-to-intervene claim as vague and conclusory where plaintiff merely "allege[d] that '[d]efendants had an affirmative duty to intervene on behalf of plaintiff . . . whose constitutional rights were being violated in their presence by other officers'"); accord Clay v. County of Clinton, 2012 U.S. Dist. LEXIS 139262 at *46-47 (N.D.N.Y Sept. 27, 2012) (further noting that such "generalized allegations" fail to provide the defendants with sufficient notice of the claim and its grounds).

Moreover, regarding the alleged use of excessive force in particular, plaintiff has failed to state a claim, see Point II, *supra*, and therefore cannot maintain a derivative failure-to-intervene claim on this ground.   See, e.g., Waddlington v. City of New York, 971 F. Supp. 2d 286, 297 (E.D.N.Y. 2013) (an underlying constitutional violation is necessary to maintain a failure-to-intervene claim); Hewitt v. City of New York, 2012 U.S. Dist. LEXIS 141067 at *34 (E.D.N.Y.

---

[12]   These defendants, who are the subject of no other claim, are John Doe Squad 1 Sergeant, Officer Nelson Frias, Officer Raymundo Flete, Officer Vallison Isaac, Officer John Doe (Squad 1 Officer 1), Officer John Doe (Squad 1 Officer 2), Officer John Doe (Squad 1 Officer 3), Officer Everett Reyes, Officer Luven Gilbert-Figueroa, Officer Vito Campanelli, Officer Jane Doe (Squad 2 Officer), John Doe Squads Lieutenant, John Doe Second Captain, John Doe Third Sergeant, Det. Solomon Chinnery, Officer John Doe (Cap-Wearing Officer) and Officer Charles Carey.

Sept. 27, 2012) (same), aff'd, 544 Fed. Appx. 24 (2d Cir. 2013). In addition, to the extent plaintiff wishes to advance an excessive force claim based on allegedly tight handcuffs, none of the officers subject to this claim are alleged to have been present in the police bus or to have heard plaintiff's complaint to Officer Bautista. See, e.g., Bowen v. Patrick, 2014 U.S. Dist. LEXIS 106708 at *17 (S.D.N.Y. Aug. 4, 2014) (to maintain a failure-to-intervene claim, the defendant must be present at the time of the underlying incident); accord Leibovitz v. City of New York, 2015 U.S. Dist. LEXIS 170476 at *65 (S.D.N.Y. Dec. 18, 2015); see also Evans v. City of New York, 2015 U.S. Dist. LEXIS 38546 at *126-27 (E.D.N.Y. Feb. 24, 2015) (same), adopted by, 2015 U.S. Dist. LEXIS 37781 (E.D.N.Y. Mar. 25, 2015).

As previously noted, none of the *arresting* officers can be subject to a failure-to-intervene claim based on the plaintiff's alleged false arrest, e.g., Jackson v. City of White Plains, 2015 U.S. Dist. LEXIS 104476 at *19, (S.D.N.Y. Aug. 7, 2015), which leaves only the *non-arresting* patrol officer defendants – *i.e.*, the "crowd" of 17 officers through which plaintiff allegedly was dragged. Yet there is no basis in the complaint to conclude these officers had any reason to suspect plaintiff was not legitimately subject to arrest. Plaintiff does not even bother to allege as much, even in conclusory fashion. See Amended Complaint ¶¶ 81 & 118-24; Wilson v. City of New York, 2010 U.S. Dist. LEXIS 92871 (E.D.N.Y. Sept. 3, 2010) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("[A]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers *where that officer observes or has reason to know . . . that a citizen has been unjustifiably arrested . . .*"; emphasis added). At the very least, these non-arresting patrol officers are entitled to qualified immunity on this claim. See, e.g., Morris v. City of New York, 2015 U.S. Dist. LEXIS 54550 (E.D.N.Y. Apr. 27, 2015) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997) ("A police officer cannot be held liable for failure to intervene unless such a failure permitted fellow officers to

'violate a suspect's clearly established statutory or constitutional rights' and was under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights.").

## POINT V

### PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST ANY OF THE REMAINING "EXECUTIVE" AND/OR "CHIEF" DEFENDANTS

Plaintiff has failed to include any of the so-called "Executive" or "Chief Defendants" – namely, Bloomberg, Kelly, Esposito, Purtell, McNamara and Anger – in any of the foregoing claims.  In addition, his final claim (addressed *infra*) is against the City pursuant to Monell v. Department of Soc. Serv., 436 U.S. 658 (1978).  See Amended Complaint ¶¶ 125 *et seq.* (Fifth Claim for Relief).  Accordingly, all claims with respect to these six defendants must be dismissed.[13]

## POINT VI

### PLAINTIFF'S MONELL CLAIMS FAIL

Plaintiff's Monell claim in large part is based on the theory that Bloomberg, Kelly, Esposito, Purtell, McNamara and Anger were officials whose acts represented official City policy and therefore exposed the City to § 1983 liability.  E.g., Board of the County Comm'rs v.

---

[13]  Plaintiff provides no allegations relating to these defendants apart from his Monell allegations other than unadorned claims of their supervisory responsibilities for the OWS anniversary "celebration".  See Amended Complaint ¶¶ 10-15.  Even if plaintiff had alleged a supervisory claim against these defendants, such a claim would fail.  See, e.g., Patterson v. City of New York, 2015 U.S. Dist. LEXIS 164404 at *16 (S.D.N.Y. Dec. 8, 2015) (citing Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) and holding that "a defendant's position in the chain of command is insufficient evidence to establish supervisory liability").  Furthermore, the "Executive" or "Chief Defendants" are unnecessary to plaintiff's case, as his custom-and-policy claims against these officials are tantamount to a claim against the City in any event.  See, e.g., Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); Fierro v. New York City Dep't of Educ., 994 F. Supp. 2d 581, 588 (S.D.N.Y.), appeal dismissed, 2014 U.S. App. LEXIS 24975 (2d Cir. Mar. 18, 2014).

Brown, 520 U.S. 397, 403-404 (1997) (municipal liability based on deprivations caused by the decisions of officials whose acts can be said to be those of the municipality itself).

As previously indicated, Plaintiff's Monell allegations are extensive, rambling and devoid of legal import.  Lumping together two separate events (*i.e.*, OWS I & II) in an attempt to piggyback his OWS II experiences with the much larger and more extensive OWS I event, plaintiff generally asserts that the City's police practices were "ineffective" and resulted in "[u]nlawful arrests".[14]  See Id. ¶¶ 139-40.  Plaintiff alleges municipal liability pursuant to a failure-to-train theory.[15]

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train."  Connick v. Thompson, 563 U.S. 51, 61 (2011).  "[W]here (as here), a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely related to the ultimate injury*, such that it actually caused the constitutional deprivation."  Wray v. City of New York, 490 F.3d 189, 196 (2d Cir. 2007) (internal quotation marks and citations omitted; emphasis added).  "[A] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the precise form a plaintiff would prefer is

---

[14]   Defendants note that the Courts have not been as receptive to the claims of the OWS I protesters as he would like to believe.  See, e.g., Garcia v. Doe, 779 F.3d 84 (2d Cir. 2014); Garcia v. Doe, 764 F.3d 170, 185 *et seq.* (2d Cir. 2014) (Livingstion, J., dissenting) (majority opinion withdrawn at 774 F.3d 168 and superseded at 779 F.3d 84); Akinnagbe v. City of New York, 2015 U.S. Dist. LEXIS 141646 (E.D.N.Y. Oct. 18, 2015); Adkins v. City of New York, 2015 U.S. Dist. LEXIS 154204 (S.D.N.Y. Nov. 15, 2015); Garcia v. Bloomberg, 2015 U.S. Dist. LEXIS 123407 (S.D.N.Y. Sept. 10, 2015).

[15]   To the extent plaintiff wishes to pursue a Monell supervision claim, his allegations in this regard are limited to skeletal assertions that the City, the Executive Defendants and/or the Chief Defendants were deliberately indifferent to proper supervision of the NYPD officers policing OWS II.  See Amended Complaint ¶¶ 164, 182 & 220-21.  As such, they contain even less substance than plaintiff's failure-to-train allegations and *a fortiori* fail for the reasons discussed *infra*.

insufficient to make such a showing." <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 193 (2d Cir. 2007) (quoting <u>Young v. City of Providence</u>, 404 F.3d 4, 27 (1st Cir. 2005)).

As an initial matter, plaintiff's inability to establish an underlying violation of his constitutional rights is fatal to his derivative <u>Monell</u> claim.  <u>See</u>, <u>e.g.</u>, <u>Schultz v. Village of Bellport</u>, 479 Fed. Appx. 358, 360 (2d Cir. 2012); <u>Schweitzer v. Crofton</u>, 560 Fed. Appx. 6, 10 (2d Cir. 2014); <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006).

Assuming, *arguendo*, plaintiff sufficiently stated a violation of his constitutional rights, he nevertheless has failed to sufficiently allege that such violation was caused by a failure to train the officer(s) involved in any such deprivation.

Plaintiff's Monell allegations boil down to the theory that the NYPD failed to provide "*further* training . . . in protestors' [sic] rights".  <u>Id</u>. ¶ 147 (emphasis added).  He claims the need for such ill-defined training was established by the number of speech-related lawsuits and decline-to-prosecute dispositions by the DANY (presumably occurring after OWS I but prior to OWS II.[16]  <u>Id</u>. ¶ 148 & 151.  He generally claims the City's policymakers were aware the NYPD would encounter large scale protests and that its officers would commit "widespread Constitutional [sic] violations", yet failed to take "steps, through training, supervision, or policy, to correct [such] harmful and unlawful practices".  <u>Id</u>. ¶¶ 159-65.  Plaintiff lists numerous legal principles governing "expressive speech protest situations", which he admits were included in Police Academy training.[17]  He asserts, however, that the City should have provided *additional*

---

[16]  Plaintiff asserts, in effect admitting it was merely a birthday gift from the District Attorney's Office, that more than 180 OWS II protesters were arrested on September 17, 2012 and that 88% of such arrests "were resolved with a decline to prosecute, dismissal or ACD".  Amended Complaint ¶ 217.

[17]  These include such broad concepts as "a person cannot be arrested for disorderly conduct for the 'mere inconveniencing of pedestrians'" and "even if protestors block the entire sidewalk, causing pedestrians to step into the street, such conduct is not enough to justify arrest for

training on these principles but failed to do so.  Id. ¶¶ 170-72.  He further acknowledges "large-scale" NYPD training specifically geared towards OWS-type protests in August 2011, but again vaguely contends the training was deficient for "not includ[ing] any training about proper policing of expressive speech activity protected by the First Amendment".  Id. ¶ 174-75.  These allegations fail for at least three reasons.[18]

First, plaintiff's apparent contention that the City was on notice of a need for further training because of the amount of private litigation and number of refusals to prosecute by the DANY is insufficient.  Obviously, litigation and refusals to prosecute contemporaneous with and/or after OWS II, see note 13, *supra*, could not put the City's policymakers on notice. Connick, 563 U.S. at 63 n.7 (citing City of Canton v. Harris, 489 U.S. 378, 395 (1989) (O'Connor, J., concurring in part and dissenting in part)).  Plaintiff's brief allegation that only 15% of the *mostly* disorderly conduct arrests during OWS I and OWS II arrests resulted in prosecution and conviction, see Amended Complaint ¶¶ 130-36, does not advance his cause. The conclusion that the other 85% "had not done anything wrong", Id. ¶ 137, is legally and logically unsupportable.  See Higginbotham v. City of New York, 105 F. Supp. 3d 369, 2015 U.S. Dist. LEXIS 62227 at 29-30 (S.D.N.Y. May 12, 2015) (alleged "high percentage of dismissals and declinations of prosecution" insufficient to allege a Monell practice); cf. Cruz v. City of New York, 2016 U.S. Dist. LEXIS 6116 at *8 (S.D.N.Y. Jan. 19, 2016) (mere citations to civil actions without further information about the cases insufficient to support a "widespread practice" claim).  There is no indication how many (if any) of these dismissals, even if on substantive grounds, were due to the *same unconstitutional conduct* that caused plaintiff's arrest

---

disorderly conduct".  Id. ¶ 170.
[18]   To the extent plaintiff is advancing a failure-to-train claim based on the NYPD's lack of training to prevent unnecessary pain and injury from the use of flex-cuffs, see Amended Complaint ¶ 194, and/or a Monell express policy claim that the City uses force to "chill" speech, see Id. ¶ 155, they fail for the same reasons set forth *infra*.

to be unlawful (whatever that might have been).  See Connick, 563 U.S. at 62-63 (factual identity between the violation alleged by the plaintiff and the alleged "pattern of similar . . . violations" required; that other convictions were overturned because of *Brady* violations not sufficiently specific); Kucharczyk v. Westchester County, 95 F. Supp. 3d 529, 543 (S.D.N.Y. 2015) (quoting Simms v. City of New York, 2011 U.S. Dist. LEXIS 115949 at *9 (E.D.N.Y. Sept. 28, 2011), aff'd, 480 Fed. Appx. 627 (2d Cir. 2012) ("The mere assertion that there are other cases pending that allege the same facts is 'conclusory, and therefore must be disregarded.'"); Hart v. City of Binghamton, 2012 U.S. Dist. LEXIS 61508 at *24 (N.D.N.Y May 2, 2012) ("the mere fact that the City has been sued does not mean that the prior suits were meritorious").  Accordingly, the lawsuits and/or refusals to prosecute could not have established that the need for new or additional training was "obvious".  See Board of the County Comm'rs v. Brown, 520 U.S. 397, 407 (1997).

Second, plaintiff has failed to plausibly allege a *specific deficiency* in the City's training program.  See, e.g., Simms v. City of New York, 480 Fed. Appx. 627 (2d Cir. N.Y. 2012).  Despite admitting that all of his "Principles of Proper Policing of Expressive Speech Activity" were taught to NYPD officers in their Police Academy training, see Amended Complaint ¶ 172, and that large-scale training was conducted in anticipation of the OWS events, plaintiff nevertheless claims that more was needed.  However, merely alleging that more training on broad legal principles was needed is insufficient.  See, e.g., Bertuglia v. City of New York, 2015 U.S. Dist. LEXIS 131008 at *114 (S.D.N.Y. Sept. 28, 2015) (quoting Connick, 563 U.S. at 68 ("[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability."); Lozada v. City of New York, 2013 U.S. Dist. LEXIS 105682 at *20-21 (E.D.N.Y. July 26, 2013) (allegations that municipality, *inter alia*, "failed to train police officers regarding 'the practical meaning of probable cause or reasonable

- 24 -

cause for arrests'" and "failed to train police officers regarding 'the importance of conducting an investigation before arresting a member of the public'" held insufficient to state a <u>Monell</u> claim); <u>Triano v. Town of Harrison</u>, 895 F. Supp. 2d 526, 536-37 (S.D.N.Y. 2012) (mere allegations of broad systemic flaws in the municipality's disciplinary process without further elaboration are insufficient to state a <u>Monell</u> claim); <u>Simms</u>, 2011 U.S. Dist. LEXIS 115949 at *9-10 (dismissing a failure-to-train claim as conclusory where plaintiff alleged that the City had a policy of failing to train/supervise its officers concerning proper investigatory practices and the obligation to effect an arrest only when probable cause exists); <u>Gojcaj v. City of Danbury</u>, 2016 U.S. Dist. LEXIS 696 at *44-47 (D. Conn. Jan. 5, 2016) (alleged general training inadequacies, such as a "failure to adopt policies . . . that would prevent police officers from arresting and/or seeking arrest warrants without probable cause", insufficient to state a failure-to-train claim); <u>Adams v. City of New Haven</u>, 2015 U.S. Dist. LEXIS 46061 at *11 (D. Conn. Apr. 8, 2015) ("plaintiff's failure-to-train claim . . . not facially plausible [where p]laintiff . . . made no more than a general allegation that defendants 'failed to adequately train and instruct [police] officers regarding the Fourth and Fourteenth Amendment rights of persons'").  Plaintiff simply fails to sufficiently "provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency."  <u>Simms</u>, 2011 U.S. Dist. LEXIS 115949 at *10.

Finally, even assuming plaintiff's "clearly established guidelines" or "proper policing" methods were insufficiently taught by the NYPD, plaintiff utterly fails to indicate which guideline or method would have prevented his allegedly unlawful arrest.  <u>See</u>, <u>e.g.</u>, <u>City of Canton</u>, 489 U.S. at 391; <u>Wray</u>, 490 F.3d at 196; <u>Amnesty Am. v. Town of West Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004); <u>Pizarro v. City of New York</u>, 2015 U.S. Dist. LEXIS 131471 at *29 (E.D.N.Y. Sept. 29, 2015).  His broad claim that NYPD officers should have been instructed

more appropriately or more fully on disorderly conduct arrests is a mere assertion that he would not have been arrested if the arresting officer had better or further training on such arrests.  Id. Such a claim further fails in any event because it is as consistent (and likely more so) with an unsatisfactorily trained officer and/or a negligently administered training program than it is to a deficient training program.  See, e.g., City of Canton, 489 U.S. at *390-91; Amnesty Am., 361 F.3d at 130-31; Hunter v. City of New York, 35 F. Supp. 3d 310, 326 (E.D.N.Y. 2014) (citing Okin v. Village of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 440-41 (2d Cir. 2009)).

## CONCLUSION

For these reasons defendants ask that the Court dismiss Plaintiff's Amended Complaint with prejudice, and grant such other relief as the Court deems just and proper.

Dated: New York, New York
      January 29, 2016

<div style="margin-left:40%">

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2323

By:         /s/                 
        Joy Anakhu
        Andrew Lucas
        Senior Counsel
        Special Federal Litigation Division

</div>

To:    VIA ECF
       David Thompson
       *Attorneys for Plaintiff*
       Stecklow & Thompson
       217 Centre Street, 6th Floor
       New York, NY 1001