IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

LUKE RICHARDSON,

                                                                        Index No. 15-cv-05775-PKC

                        PLAINTIFF,
            vs.                                                  Memorandum of Law
                                                                        in Opposition


THE CITY OF NEW YORK, a municipal entity,
et al.,

                        DEFENDANTS.
_____

# **Table of Contents**

I.   False Arrest ------------------------------------------------------------------- 1
II.  Personal Involvement and Failure to Intervene ---------------------------- 3
   A.   The Legal Standards ------------------------------------------------------- 3
   A.   The Officers Can Be Considered in Three Groups ------------------------ 4
   B.   Personal Involvement of the Group One Officers ------------------------- 5
   C.   Personal Involvement of the Group Two Officers ------------------------ 6
   D.   Personal Involvement of the Group Three Officers ---------------------- 7
III. The Complaint States a Claim for First Amendment Retaliation ----------------------- 8
IV.  The Plaintiff's *Monell* Claim ------------------------------------------ 10
   A.   The *Monell* Legal Standard ---------------------------------------------- 11
   B.   There Is No Heightened Pleading Standard for *Monell* Claims,  Nor Any
Requirement to Plead Evidence ------------------------------------------------- 11
   C.   The Legal Standard for Pleading an Unlawful Governmental Custom or Policy- 12
   D.   The Legal Standard for Pleading Failure to Train ----------------------- 13
   E.   The Complaint Alleges A Pattern of 2,200 Unlawful Arrests ----------------------- 14
   F.   The Complaint Provides Extensive Detail Concerning the Unlawful Practices--- 19
   G.   The NYPD's Failure to Train its Officers ------------------------------- 21
V.   Liability of Executive Defendants --------------------------------------- 26
VI.  The Plaintiff's Claim for Excessive Force -------------------------------- 27

# <u>Table of Authorities</u>

<u>C</u>ASES

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. N.Y. 1999) -------------------------------------------------7

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) ------------------------------- 13, 14

*Anderson News, LLC. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012)------------------------- 12, 15

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. N.Y. 1994) -----------------------------------------------4

*Arista Records LLC v. Doe*, 604 F.3d 110 (2d Cir. 2010) ------------------------------------------ 12, 20

*Askins v. City of New York*, 2012 U.S. Dist. LEXIS 19940 (S.D.N.Y. Feb. 13, 2012) ---------------------------5

*Bertuglia v. City of New York*, 2015 U.S. Dist. LEXIS 131008 (S.D.N.Y. Sept. 28, 2015)------------------ 26

*Broughton v. State*, 37 N.Y.2d 451 (1975) -------------------------------------------------- 2, 19

*Brown v. City of New York*, 798 F.3d 94 (2d Cir. N.Y. 2015) ------------------------------------------ 28

*Butler v. Suffolk County*, 289 F.R.D. 80 (E.D.N.Y. 2013) --------------------------------------------- 27

*Cal. v. Hodari D.*, 499 U.S. 621 (1991) ------------------------------------------------------------6, 7

*Calamia v. New York*, 879 F.2d 1025 (2d Cir. N.Y. 1989)--------------------------------------------- 29

*Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364 (W.D.N.Y. 2012) ------------------------ 12

*Casale v. Kelly*, 710 F. Supp. 2d 347 (S.D.N.Y. 2010) --------------------------------------------- 15

*Cole v. City of New York*, 2013 U.S. Dist. LEXIS 28530 (S.D.N.Y. Feb. 28, 2013)---------------------------5

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ------------------------------------------------- 27

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)--------------------------------------------------6

*Cowan v. Breen*, 352 F.3d 756 (2d Cir. Conn. 2003)----------------------------------------------------6

*Dorsett v. County of Nassau*, 732 F.3d 157 (2d Cir. 2013) ----------------------------------------------8

*Edwards v. City of New York*, 2015 U.S. Dist. LEXIS 114039 (S.D.N.Y. Aug. 27, 2015) -------------------- 13

*Ferrari v. County of Suffolk*, 790 F. Supp. 2d 34 (E.D.N.Y. 2011) ----------------------------------- 14

*Floyd v. City of New York*, 813 F. Supp. 2d 417 (S.D.N.Y. 2011) --------------------------------- 16, 17, 18

*Graham v. Connor*, 490 U.S. 386 (1989) ------------------------------------------------------- 29

*Green v. City of New York*, 465 F.3d 65 (2d. Cir. 2006) ----------------------------------------------- 14

*Gregory v. Chicago*, 394 U.S. 111 (1969) -----------------------------------------------------------7

*Hart v. City of Binghamton*, 2012 U.S. Dist. LEXIS 61508 (N.D.N.Y May 2, 2012) ------------------------ 26

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733 (2d Cir. N.Y. 2003) --------------------------------------- 27

*Henry v. Daytop Village*, 42 F.3d 89 (2d Cir. N.Y. 1994) -------------------------------------------------7

*Higginbotham v. City of New York*, 105 F. Supp. 3d 369 (S.D.N.Y. 2015)------------------------------- 16

*Holmes v. City of New York*, 2016 U.S. Dist. LEXIS 27945 (S.D.N.Y. Mar. 4, 2016) ----------------------- 13

*Jackson v. City of York*, 939 F. Supp. 2d 219 (E.D.N.Y. 2013) -------------------------------------------4

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) -------------------------------------------- 14

*Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529 (S.D.N.Y. 2015) --------------------------- 12, 25

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. N.Y. 2015)------------------------------------- 19

*Lloyd v. City of New York*, 43 F. Supp. 3d 254 (S.D.N.Y. 2014) --------------------------------------- 12

*MacFarlane v. Grasso*, 696 F.2d 217 (2d Cir. 1982) -------------------------------------------------7

*Mack v. Town of Wallkill*, 253 F. Supp. 2d 552 (S.D.N.Y. 2003) -------------------------------------4

*Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016) ------------------ passim

*Mateo v. County of Suffolk*, 2014 U.S. Dist. LEXIS 150393 (E.D.N.Y. Oct. 23, 2014) ----------------------- 11

*Meyers v. City of New York*, 2015 U.S. Dist. LEXIS 145847 (S.D.N.Y. Oct. 27, 2015) ---------------------- 10

*Michael v. County of Nassau*, 2010 U.S. Dist. LEXIS 82764 (E.D.N.Y. Aug. 11, 2010)----------------------- 14

*Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)--------------- 11, 12

*Okin v. Vill. Of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009) ------------------- 13, 14, 24

*Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81 (2d Cir. 2011)------------------------- 12

*People v. Jones*, 9 N.Y.3d 259 (2007) ----------------------------------------------------------------- 22

*People v. Nixon*, 248 N.Y. 182 (1928) ----------------------------------------------------------- 21

*People v. Pearl*, 66 Misc. 2d 502, 321 N.Y.S.2d 986, 987 (1st Dep't 1971)---------------------------- 21

*Pizarro v. City of N.Y.*, 2015 U.S. Dist. LEXIS 131471 (E.D.N.Y. Sept. 29, 2015) --------------------------- 25

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. N.Y. 2001) -------------------------------------------3

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119 (2d Cir. N.Y. 1991) ----------------------------------- 20

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. N.Y. 2003) ---------------------------------------------2

*Schanbarger v. Kellogg*, 423 US 929 (1975) ------------------------------------------------------------- 19
*Simms v. City of New York*, 2011 U.S. Dist. LEXIS 115949 (E.D.N.Y. Sept. 27, 2011) ----------------------- 25
*Sletten v. LiquidHub, Inc.*, 2014 U.S. Dist. LEXIS 94697 (S.D.N.Y. July 10, 2014)---------------------------- 12
*Smith v. Campbell*, 782 F.3d 93 (2d Cir. N.Y. 2015) ------------------------------------------------------- 8, 10
*Sorlucco v. New York City Police Dep't*, 971 F.2d 864  (2d Cir. N.Y. 1992) --------------------------------- 12
*Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012) ------------------------------------------- 18, 19
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ---------------------------------------------8
*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. Conn. 2014) ----------------------------------------------------4
*Thomas v. Collins*, 323 U.S. 516 (1945) ---------------------------------------------------------------------9
*Triano v. Town of Harrison*, 895 F. Supp. 2d 526 (S.D.N.Y. 2012) ------------------------------------------ 25
*United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217 (1967) ---------------------------------------9
*Weather v. City of Mt. Vernon*, 474 Fed. Appx. 821 (2d Cir. N.Y. 2012)-------------------------------- 29, 30
*Wong v. Yoo*, 649 F. Supp. 2d 34 (E.D.N.Y. 2009) -----------------------------------------------------------6
*Wray v. City of New York*, 490 F.3d 189 (2d Cir. 2007)----------------------------------------------- 11, 14

## STATUTES

*Adams v. City of New Haven*, 2015 U.S. Dist. LEXIS 46061 (D. Conn. Apr. 8, 2015) ----------------------- 25
*Connick v. Thompson*, 563 U.S. 51 (2011) ---------------------------------------------------------- 23, 24, 25
*Cruz v. City of New York*, 2016 U.S. Dist. LEXIS 6116 (S.D.N.Y. Jan. 19, 2016) ----------------------------- 25
*Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. N.Y. 2011) ---------------------------------------------- 22
*Gojcaj v. City of Danbury*, 2016 U.S. Dist. LEXIS 696 (D. Conn. Jan. 5, 2016) ----------------------------- 25
*Lozada v. City of New York*, 2013 U.S. Dist. LEXIS 105682 (E.D.N.Y. July 26, 2013) ----------------------- 25
*Marcavage v. City of New York*, 689 F.3d 98 (2nd Cir. Nev. 2012) --------------------------------------- 22
Penal Law § 240.20(5) -------------------------------------------------------------------------------- 22, 24

## RULES

Fed. R. Civ. P.  § 12(b)(6) -------------------------------------------------------------------------- 8, 15
Fed. R. Civ. P.  § 8(a)(2)--------------------------------------------------------------------------- 8, 12
Fed. R. Civ. P.  § 8(e)(2) -------------------------------------------------------------------------6, 7

## I.  False Arrest

The plaintiff was arrested on **September 17**, 2012, in the vicinity of 28 Broadway. (Compl. ¶ 69).   As the complaint says, the police arrested the plaintiff "without warning," and "[d]espite issuing no order to disperse."  (Compl. ¶¶ 2, 80).  The defendants argue: "plaintiff successfully shoots down his own theory in paragraph 213 of the Amended Complaint when he admits that such an order [to disperse] in fact was given."  (Def. Mem. pp. 7-8).  This may sound like a colorable argument, until you look at paragraph 213 of the complaint, which says: "On **September 15**th at 8:30 p.m., near Thames Street, a commander ordered the crowd to disperse…."  (emphasis added).  The order to disperse mentioned in paragraph 213 was given two days earlier than the plaintiff's arrest.  (Although it doesn't really matter, the order to disperse was also given about four blocks away from the plaintiff's arrest location).  Are the defendants seriously suggesting that this September 15th order justified the plaintiff's September 17th arrest?  The defendants have made no effort to accurately present the facts of the complaint to this court and make legitimate arguments.

The allegations most relevant to the claim for false arrest are as follows.   "At or around 10 AM [on September 17, 2012] Plaintiff was standing on the sidewalk at or near 28 Broadway making plans with others from OWS he had reunited with."  (¶ 69).  "Plaintiff did not engage in disorderly conduct, or any other violation or crime."  (¶ 94).  The plaintiff was arrested without a warrant.  (Compl. ¶ 109).  The complaint describes the arrest and its participants:

> The defendant officers were deployed in and around the area that the plaintiff met with these others [from OWS].  (¶ 70).  While Plaintiff's back was turned,

Defendant Police Officers advanced southbound, ramming Plaintiff and other bystanders with their batons. (¶ 2).  Without warning, Defendant Police Officers struck Plaintiff from behind, grasping their batons between both hands and shoving Plaintiff in the back.  (¶ 80).  Plaintiff and others expressed dissatisfaction with the violent actions of Defendant Police Officers. Despite issuing no order to disperse, Defendant Police Officers then arrested Plaintiff, alleging violations without factual basis in retaliation for Plaintiff's protected activity.  (¶ 2).  Defendant Captain Iocco grabbed plaintiff by the strap of his messenger bag  and dragged him through a crowd of defendant police officers." (¶81).  Captain Iocco then transferred custody of Plaintiff to NYPD Officer Ivan Bautista, [and] Defendant Sergeant Carleton Suddler. (¶82).  The defendant police officers including Captain Iocco, Defendant NYPD Officer Ivan Bautista and Sergeant Carleton Suddler caused the plaintiff to be arrested.  (¶ 83).  Defendant NYPD Officer Ivan Bautista and/or Carleton Suddler placed plastic flex-cuffs tightly around Plaintiff's wrists. (¶86).  Plaintiff was arrested by the Defendant Police Officers without probable cause, without a warrant, and without the plaintiff's consent.  (¶ 110).

The Defendant Police Officers including Defendant Captain Iocco, Defendant NYPD Officer Ivan Bautista, Sergeant Carleton Suddler, NYPD Officer Regina Vailes, NYPD Officer David Scott, NYPD Officer Halima Smith, NYPD Officer Chao Li, and Second Captain seized the plaintiff.  (¶ 111).  Other Defendant Police Officers directly participated in the plaintiff's arrest by grabbing him and/or pushing him, including NYPD Officer Regina Vailes, NYPD Officer David Scott, NYPD Officer Halima Smith, NYPD Officer Chao Li, and Second Captain. (¶ 84).   Other Defendant Police Officers named herein who were present, and were close enough to intervene in the plaintiff's arrest, and who failed to do so, were the other Defendant Police Officers with the exceptions of Chief of [Department] Esposito, Chief Purtell, Chief McNamara, and Chief Anger. (¶ 85).

Thus, the complaint alleges that the plaintiff was on a public sidewalk, during the daytime, talking to Occupy Wall Street Associates about protest plans and doing nothing wrong when he was arrested without warning and without a warrant.  This Court recently held, correctly, that allegation of arrest without a warrant, by itself, is sufficient to state a claim for false arrest under Broughton v. State.  *See Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466, *16-17 (S.D.N.Y. Mar. 7, 2016) (Castel. J.) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975), *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) and *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. N.Y. 2003)).  In any

case, because the defendants **sole** basis for their motion to dismiss the plaintiff's claim for false arrest is their "paragraph 213" argument, the defendants' motion should be denied. All other possible arguments are waived for the purposes of this motion.

## II. Personal Involvement and Failure to Intervene

The defendants argue that various individual officers present at the scene of the arrest should be dismissed because the complaint fails to plead their involvement in the arrest. The defendants also argue that claims for failure to intervene should be dismissed.

### A. The Legal Standards

One of the elements of false arrest, personal involvement can be established by showing that the defendant: "personally participated in the alleged constitutional violation, [or] was grossly negligent in supervising subordinates who committed the wrongful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. N.Y. 2001). Participation, and thus, personal involvement, means "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Marom*, 2016 U.S. Dist. LEXIS 28466, * 52-53 (quoting *Provost*, 262 F.3d at 155).

As the Second Circuit explained in <u>Provost</u>, the phrase "direct participation" encompasses a defendant who, "with knowledge of the illegality, participates in bringing about a violation of the victim's rights but does so in a manner that might be said to be 'indirect' -- **such as ordering or helping others** to do the unlawful acts, rather than doing them him- or herself." *Provost*, 262 F.3d at 155 (emphasis added). Thus, a particular officer who was not the "arresting" officer still faces liability if he or she assisted in the arrest in some fashion. *See Mack v. Town of Wallkill*, 253 F. Supp. 2d 552,

558 (S.D.N.Y. 2003) ("[A] non arresting officer directly involved in the arrest of plaintiff could be liable for false arrest.").

The elements of a claim for failure to intervene do not include personal involvement. An officer may be held liable for preventable harm caused by the actions of other officers, if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jackson v. City of York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013). An officer has a duty to intervene to prevent an unlawful arrest. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. N.Y. 1994). An officer's ability to actually prevent the harm is not an issue to be decided on the pleadings: "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury." *Id. See also Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. Conn. 2014) (same) ("Whether some of the defendants were in fact unable to intercede … because of the manner, place, and timing of their deployment in the raid itself, is properly a question for a jury.").

### A. The Officers Can Be Considered in Three Groups

The officers present at the scene can be divided into three groups. Group One is composed of the three officers who most directly participated in placing the plaintiff under arrest: Captain Iocco, P.O. Bautista, and Sgt. Suddler. Iocco was the first to seize the plaintiff and ordered his arrest, while Bautista and Suddler took custody of the plaintiff and cuffed him. Group Two is composed of officers who participated in the arrest by seizing, grabbing, or pushing him as he was being arrested. This group includes all of the members of Group One, plus Officer Vailes, Officer Scott, Officer Smith,

Officer Li, and "Second Captain."  Group Three is composed of officers who were present at the scene of the arrest, and who restricted the plaintiff's freedom of movement by pushing him with their batons, but who did not grab him.  This group includes all the officers at the scene who are not in Group One or Group Two.

**B.  Personal Involvement of the Group One Officers**

Group One.  The defendants make no argument that Captain Iocco lacked personal involvement with the arrest.  However, for Bautista and Suddler the defendants argue that because Captain Iocco grabbed the plaintiff before Bautista and Suddler cuffed him, the latter officers lack personal involvement.  However, seizing and handcuffing a suspect is sufficient participation to amount to personal involvement.  *See Cole v. City of New York*, 2013 U.S. Dist. LEXIS 28530 (S.D.N.Y. Feb. 28, 2013) (personal involvement where officer "physically handcuffed and arrested Plaintiff").  The defendants provide no case law suggesting that it does not.  *See also Marom*, 2016 U.S. Dist. LEXIS 28466 (potential liability for false arrest for officers "personally involved in creating the NYPD paperwork documenting [the plaintiffs'] arrests" -- i.e., post-cuffing arrest processing).

Without any factual basis in the complaint, the defendants argue that officers Bautista and Suddler are analogous to officers arriving at an arrest scene after the fact with no personal knowledge of the basis for the arrest.  The defendants cite Askins v. City of New York, a case in which "the arresting officer was **not present** and **had no knowledge** of the basis for plaintiff's arrest."  (Def. Memo. p. 6) (emphasis added).  *See Askins v. City of New York*, 2012 U.S. Dist. LEXIS 19940, 13-14 (S.D.N.Y. Feb. 13, 2012).  Nothing in the complaint suggests that officers Bautista and Suddler were late arrivals who lacked knowledge of the facts of the arrest.  To the contrary, these officers

were present and witnessed the absence of unlawful conduct on the part of the plaintiff prior to participating in his arrest.  (Compl. ¶¶ 70-74). [1]

### C.  Personal Involvement of the Group Two Officers

The Group Two officers participated in the arrest by seizing, grabbing, or pushing the plaintiff as he was being arrested.  "[A] Fourth Amendment seizure occurs 'when there is a governmental termination of freedom of movement through means intentionally applied.'" *Cowan v. Breen*, 352 F.3d 756, 763-764 (2d Cir. Conn. 2003) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).  "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful [i.e, regardless of whether a stop or arrest occurs]."  *Cal. v. Hodari D.*, 499 U.S. 621, 626 (1991).  Consistent with these principles, courts have found officers potentially liable for false arrest even when their participation was "limited to managing crowd control."  *Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009).  Group Two officers performed "laying on of hands," which is sufficient for direct participation liability.

The complaint pleads in the alternative that the Group Two officers are liable for failure to intervene.  Such alternative pleading is permitted.  *Wong*, 649 F. Supp. 2d at 61 (denying summary judgment on both false arrest and failure to intervene).  While judgment for both claims could not be entered against the same officer, at the pleading stage, inconsistent theories of liability can be set forth in the same complaint.  The Second Circuit holds:

> Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to plead two or more statements of a claim, even within the same count, regardless of consistency.  The flexibility afforded by Rule 8(e)(2) is

---

[1]     While I do not believe it is necessary, for the avoidance of any doubt, express allegations this effect have been added to the proposed amended complaint.  See Proposed Amended Complaint ¶ 90.

especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims. *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. N.Y. 1999) (citing *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. N.Y. 1994))

Even where the allegations are not specifically pleaded as "in the alternative," the Second Circuit has ruled that: "Rule 8(e)(2) offers sufficient latitude to construe separate allegations in a complaint as alternative theories." *Id.* (citing *MacFarlane v. Grasso*, 696 F.2d 217, 224-25 (2d Cir. 1982) and *Henry*, 42 F.3d at 94.

It is clearly established that it is not permissible to arrest peaceful demonstrators who are committing no crime. *See Gregory v. Chicago*, 394 U.S. 111 (1969) ("Petitioners' march, if peaceful and orderly, falls well within the sphere of conduct protected by the First Amendment.") (vacating convictions for disorderly conduct). All of the officers witnessed or participated in the entire interaction between the plaintiff and the police, and therefore were fully aware of facts giving notice that the plaintiff's arrest was unlawful. Their duty to intervene was thus engaged. For the same reason, none of these officers are entitled to qualified immunity.

### D. Personal Involvement of the Group Three Officers

The Group Three officers pushed the plaintiff with batons, but did not grab or seize the plaintiff. They were "in and around the area that the plaintiff met with these others," they "advanced southbound, ramming Plaintiff and other bystanders with their batons," they "struck Plaintiff from behind, grasping their batons between both hands and shoving Plaintiff in the back," and they were "were close enough to intervene in the plaintiff's arrest, and … failed to do so." (Compl. ¶¶ 2, 80, 85). These officers did not 'lay on hands,' but they **did** "appl[y] of physical force to restrain movement," even if the final arrest of the plaintiff was performed by others. *Hodari D.*, 499 U.S. at 626. This is

sufficient for false arrest liability.  As with the Group Two officers, claims for failure to

intervene are pled against these officers in the alternative, and the failure to intervene

claims must be sustained for the same reasons.

## III.   The Complaint States a Claim for First Amendment Retaliation

"[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.

Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible

'short and plain' statement of the plaintiff's claim, not an exposition of his legal

argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).  When ruling on Rule 12(b)(6)

motions to dismiss, "courts must consider the complaint in its entirety," to determine

"whether all of the facts alleged, taken collectively," state a cause of action.  *Tellabs, Inc.*

*v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322-323 (2007).  The function of the first

cause of action is to give notice that the plaintiff should be granted relief on any

constitutional legal theory to which the facts pled elsewhere in the complaint show the

plaintiff to be entitled.  The Defendants seek dismissal of the first claim on the basis that

it fails to state a claim for First Amendment retaliation.  The complaint as a whole states

such a claim, however, and so the defendants' motion must be denied.

The Second Circuit has held that "To plead a First Amendment retaliation claim a

plaintiff must show: (1) he has a right protected by the First Amendment; (2) the

defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that

right; and (3) the defendant's actions caused him some injury." *Smith v. Campbell*, 782

F.3d 93, 100 (2d Cir. N.Y. 2015) (quoting *Dorsett v. County of Nassau*, 732 F.3d 157,

160 (2d Cir. 2013)). "A plaintiff has standing if he can show **either** that his speech has

been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160 (emphasis in original).

The plaintiff was in the financial district for the purpose of taking part in the first anniversary of the first OWS march, and to call "for the prosecution of financial institutions and their executives for their crimes which caused the financial collapse of 2007-2008." (Compl. ¶¶ 65-69). At the precise moment of his arrest, he was "making plans with others from OWS he had reunited with" for such protest/assembly activity. (Compl. ¶ 69). The Supreme Court has said: "[T]he rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. 'All these, though not identical, are inseparable.'" *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967) (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)). The complaint says the plaintiff was assembling with others for the purpose of seeking redress of grievances. (Compl. ¶¶ 2, 65-69). That is core First Amendment activity.

In Marom, this Court recently denied a motion to dismiss a similar claim. The plaintiffs in Marom also assembled for an anniversary of Occupy Wall Street, and were arrested. This Court explained: "the pertinent allegation made in the [complaint] is that prior to being 'violently' arrested by police, all three plaintiffs were 'lawfully present' in Zuccotti Park 'in connection with the six month anniversary of the OWS movement.'" *Marom*, 2016 U.S. Dist. LEXIS 28466, *34-35. This Court cited Smith and Dorsett, as establishing that an arrest, like the issuance of a traffic ticket in Smith, is sufficient

"concrete harm" to state a cause of action.  *See id.*  This Court cited two other recent decisions in this district which had reached the same conclusion, holding that OWS protestors arrested by police could state a First Amendment Retaliation claim.  *See id.* (citing *Meyers v. City of New York*, 2015 U.S. Dist. LEXIS 145847 (S.D.N.Y. Oct. 27, 2015) and *Gersbacher v. City of New York*, 2015 U.S. Dist. LEXIS 129994 (S.D.N.Y. Sept. 25, 2015)).  This Court held:

> Even though the facts alleged by the plaintiff in her complaint in <u>Smith v. Campbell</u> provided ample factual support, beyond mere proximity in time, for the inference that the officer's conduct was in retaliation for the plaintiff's protected speech, 782 F.3d at 96, the Court concludes that Marom's and Rocek's allegation that they were "lawfully present in Liberty Plaza in connection with the six month anniversary of the OWS movement" and were subsequently arrested, is adequate to state a retaliatory motive. … Thus, Marom and Rocek have stated a plausible First Amendment retaliation claim.  *Marom*, 2016 U.S. Dist. LEXIS 28466, * 36 (citing *Smith*, 782 F.3d at 96).

This Court should reach the same result in this case.  The facts strongly support the conclusion that had the plaintiff been anyone other than an OWS protestor, he would not have been arrested.  Businesspeople and tourists standing on downtown sidewalks are not arrested for doing so  – just protestors exercising their First Amendment rights.[2]  The plaintiff's "concrete injury" was being manhandled and taken into custody.  And, while the plaintiff has intended to take part in protest activities throughout the day, he could not, because at 10:00 AM he was taken into police custody and held for the rest of the day.  Thus, in addition to suffering a concrete injury, his speech was chilled.

## IV.   The Plaintiff's *Monell* Claim

The plaintiff's Monell claim is twofold.  The plaintiff alleges an informal, but widespread and persistent, custom and practice of arresting OWS protestors for lawful,

---

[2]       *See* Proposed Amended Complaint 163.

peaceful protest activity.  (*See* Compl. ¶¶ 129-141).  Concurrently, the plaintiff alleges that the City of New York failed to train its officers concerning the constitutional rights of protestors and the proper enforcement of the disorderly conduct statutes in a protest setting.  (*See* Compl. ¶¶ 159-172).  As a result of these policies, the plaintiff was summarily arrested, despite breaking no law, because he was an OWS protestor.

### A.  The *Monell* Legal Standard

Under *Monell,* a city can be found liable for "constitutional deprivations visited pursuant to governmental custom." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-691 (1978).  To hold a city liable under § 1983 for the unconstitutional actions of is employees, a plaintiff is required to plead three elements: (1) an official policy or custom that (2) causes the plaintiff to be subject to (3) a denial of a constitutional right.  *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). The existence of a municipal policy or custom may be established in four ways, among them, by pleading: "(3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees."  *Mateo v. County of Suffolk*, 2014 U.S. Dist. LEXIS 150393, 23-24 (E.D.N.Y. Oct. 23, 2014) (emphasis added) (quoting *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006) (citing *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996)).

### B.  There Is No Heightened Pleading Standard for *Monell* Claims, Nor Any Requirement to Plead Evidence

"Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2)." *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 269 (S.D.N.Y. 2014).  *Accord Kucharczyk v. Westchester Cnty.,* 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015).  In applying *Twombly* and *Iqbal*  plausibility analysis, the Court must accept all allegations in the pleading as true and "draw[ ] all reasonable inferences and resolve[ ] all conflicts and ambiguities in favor of plaintiffs." *Anderson News, LLC. v. Am. Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2012) (citing *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 85 n.1 (2d Cir. 2011)).  Neither *Twombly* nor *Iqbal* "require the pleading of specific evidence." *Arista Records LLC v. Doe*, 604 F.3d 110, 120-21 (2d Cir. 2010).   "Plaintiff may meet his initial pleading burden through the use of hearsay evidence.  …[N]either *Twombly* nor *Iqbal* altered the rule that a plaintiff need not plead specific, admissible evidence in support of a claim, and a contrary rule would confuse the principles applicable to a motion to dismiss with those governing a motion for summary judgment." *Sletten v. LiquidHub, Inc*., 2014 U.S. Dist. LEXIS 94697, 30-31 (S.D.N.Y. July 10, 2014) (quoting *Campanella v. Cnty. of Monroe*, 853 F. Supp. 2d 364, 378 (W.D.N.Y. 2012)).

**C.  The Legal Standard for Pleading an Unlawful Governmental Custom or Policy**

A city's Section 1983 liability may arise from a constitutional deprivation "pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870-871 (2d Cir. N.Y. 1992) (citing *Monell*, 436 U.S. at 691).  Where the unlawful practices of city officials are "persistent and widespread," they can be "so permanent and well settled as to constitute a 'custom or usage' with the force

of law." *Id.* "A persistent practice may constitute municipal policy whether it is carried out by the policymakers themselves, by other high-ranking officials, or even by subordinate employees." *Id.*

**D.  The Legal Standard for Pleading Failure to Train**

Section 1983 liability may also be "premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights." *Okin v. Vill. Of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 439 (2d Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).  Failure to train amounts to deliberate indifference where the plaintiff shows: "(1) that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992).

The Second Circuit's standard for a failure to train claim at the **pleading stage** recognizes that the plaintiff will usually be unable to plead such a claim in great detail. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 fn.10 (2d Cir. 2004).  Even though *Amnesty Am.* was decided prior to *Iqbal*, it has not been overruled by the Second Circuit, and district courts have continued to apply its standard to *Monell* claims stating of failure to train.  *See Holmes v. City of New York*, 2016 U.S. Dist. LEXIS 27945, 18-19 (S.D.N.Y. Mar. 4, 2016) (citing *Amnesty Am.*, 361 F.3d at 130 n.10); *Edwards v. City of New York*, 2015 U.S. Dist. LEXIS 114039, *10 (S.D.N.Y. Aug. 27, 2015); *Ferrari v.*

*County of Suffolk*, 790 F. Supp. 2d 34, 45 (E.D.N.Y. 2011); *Michael v. County of Nassau*, 2010 U.S. Dist. LEXIS 82764, * 11 (E.D.N.Y. Aug. 11, 2010).

Cases such as <u>Wray v. City of New York</u> which refer to a requirement to identify a "specific deficiency in the City's training program" are applying a summary judgment standard, not a pleading standard. *Wray*, 490 F.3d at 196 (appeal of summary judgment). After <u>Wray</u>, the Second Circuit in <u>Okin v. Vill. of Cornwall-on-Hudson Police Dep't</u> explained that evidence of a "specific deficiency" in the city's training program was necessary only "in order to proceed **beyond summary judgment**." *Okin*, 577 F.3d at 440-441 (quoting *Amnesty Am*, 361 F.3d at 129) (emphasis added).[3] However, as the discussion below shows, because the complaint does, in fact, identify a specific deficiencies in the City's training program, the motion must be denied whatever standard is applied.

### E.  The Complaint Alleges A Pattern of 2,200 Unlawful Arrests

The complaint alleges a pattern of approximately 2,200 unlawful arrests of Occupy Wall Street protestors in Manhattan from Sept. 17, 2011 through Sept. 17, 2012. (Compl. ¶¶ 130-136).  These were warrantless arrests which resulted either in a dismissal or in a decision by the District Attorney's office that the case should not be prosecuted. The defendants do not address the merits of this allegation except in flippant and conclusory fashion.  The defendants speculate that the very low conviction rate was the result of "the policy decision of the New York District Attorney ('DANY') to avoid

---

[3]        The Second Circuit was very clear that it was describing a standard of proof, not pleading, referring to the obligation to raise "a triable issue of fact." *Id.*  A 2007 Second Circuit decision made it even clearer, stating the elements of a failure to train claim, and then adding: "**In addition, at the summary judgment stage**, plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) (quoting *Green v. City of New York*, 465 F.3d 65, 81 (2d. Cir. 2006) and *Amnesty Am.*, 361 F.3d at 129)(emphasis added).

fulfilling its obligation to prosecute the arrestees." (Def. Memo. p. 5, fn. 6).  Referring to

the 88% of arrests on September 17, 2012 which were dismissed, the defendants call

these dismissals "merely a birthday gift from the District Attorney's Office" to Occupy

Wall Street.  (Def. Memo. p 22, fn. 16).

Shorn of its sarcasm, the defendants' argument is that the Court must find it more

plausible that the District Attorney's Office systematically failed prosecute meritorious

cases, than that the NYPD systematically made unlawful arrests.  However, even if there

were any basis in the complaint to support the defendants' "birthday gift" theory, the

Court cannot decide this issue on the pleadings.  The Second Circuit has held: "The

choice between two plausible inferences that may be drawn from factual allegations is

not a choice to be made by the court on a Fed. R. Civ. P. 12(b)(6) motion. Fact-specific

questions cannot be resolved on the pleadings. …. A court ruling on such a motion may

not properly dismiss a complaint that states a plausible version of the events merely

because the court finds a different version more plausible."  *Anderson News, L.L.C. v.*

*Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012).[4]

The defendants cite this Court's decision in <u>Higginbotham v. City of New York</u>,

implying that this Court held that a pattern of dismissed criminal cases could never

---

[4]     Unfortunately, it is quite plausible that the NYPD should maintain an unconstitutional custom or policy of arresting citizens in the absence of probable cause.  For almost 20 years, the NYPD made thousands of arrests under loitering statutes that had been struck down as unconstitutional, despite "numerous" court orders directing the NYPD to discontinue the practice by ordering and training its officers to cease making the arrests. *See Casale v. Kelly*, 710 F. Supp. 2d 347 (S.D.N.Y. 2010).  As recently as 2010, the Southern District of New York found it necessary to hold the City in contempt, explaining: "the City has done little on its own initiative or with reasonable conviction and speed to end the illegal enforcement; indeed, the City has actively dragged its feet. … The City's obstinance and uncooperativeness throughout the present actions is offensive to the rule of law. The human toll, of course, has been borne by the tens of thousands of individuals who have, at once, had their constitutional rights violated and been swept into the penal system." *Id.*  In the same case, the court noted with disgust: "It has also been defendants' modus operandi to cast suspicion on plaintiff's data demonstrating the pervasiveness of the continuing enforcement." *Id.* at 353.  It appears that this will be part of the defendants' strategy in this case as well.

support a *Monell* claim.  *See Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 382 (S.D.N.Y. 2015) (Castel, J.) (cited in Def. Memo p. 23).  However, the entire *Monell* claim in the *Higginbotham* complaint was seven paragraphs.[5]  The policy that the plaintiff complained of was a "policy or practice of 'imped[ing] and arrest[ing] those individuals who were observed photographing, videotaping or otherwise recording the illegal and unconstitutional acts of the NYPD.'"  *Higginbotham*, 105 F. Supp. 3d at 382 (quoting Compl. ¶ 39).  The complaint alleged that there were 44 such arrests, but did not allege the outcome of any of them, or any other facts about them.  The Court further explained that the plaintiff asserted that this practice of arresting journalists "arose in parallel to another City policy (which is not at issue here) of making unlawful mass arrests and using excessive force at Occupy Wall Street demonstrations, to discourage participation in the demonstrations." *Id.* (quoting Compl. ¶ 38.).  In support of that not-at-issue policy, the complaint said simply that there was a "high percentage of dismissals and declinations of prosecution," with no further detail of any kind.  This Court held that this allegation did not support the plaintiff's <u>Monell</u> claim because it was not "link[ed] … to the alleged policy of specifically targeting journalists."  *Id*. at 383.  This Court's decision in <u>Higginbotham</u> didn't announce (or apply) a rule of law about arrest and conviction statistics, it simply dismissed a seven-paragraph <u>Monell</u> claim which lacked detail and logical cohesion.

There is certainly no rule that police statistics cannot support a <u>Monell</u> claim.  In the class action <u>Floyd v. City of New York</u>, this district has entertained a major *Monell* case which was predicated on identifying meaningful patterns in data of police activity,

---

[5]     *Higginbotham v. City of New York*, 14-cv-08549-PKC (S.D.N.Y.), Docket No. 1 (Filed 10/27/14), ¶¶ 34-40.

even though the lawfulness of many of the individual actions within the data set (police determinations of the existence of reasonable suspicion for a <u>Terry</u> stop) could never realistically be known.  At the pleading stage, the plaintiffs cited the numerical rate of arrests per *Terry* stop, and the rate of recovery of contraband, both in general and for particular minority groups.[6]

The defendants in <u>Floyd</u> did not file a motion to dismiss on the pleadings, possibly recognizing its futility.  As the factual record of the <u>Floyd</u> case developed, the plaintiffs proposed through expert testimony that stops could be classified into five different categories — including two categories of "justified" stops, one category of "unjustified" stops, and two categories of "indeterminate" stops.  *See Floyd v. City of New York*, 813 F. Supp. 2d 417, 447 fn. 251 (S.D.N.Y. 2011) (decision and order on summary judgment).  On summary judgment, the Court accepted for the purposes of the motion the assertion of the plaintiffs' expert "that 24.37 percent of recorded stops and frisks during the period 2004 through 2009 were indeterminate, 'lack[ing] sufficiently detailed documentation to assess their legality,' while 6 percent of stops 'lack legal justification.'" *Id.* at 447.  On this basis, the court found that "plaintiffs have demonstrated that there is a disputed issue of fact as to whether the NYPD has engaged in a widespread practice of suspicionless stops and frisks."  *Id.* at 448.

Thus, the <u>Floyd</u> case demonstrates that if an unlawful trend is discernible from statistics of police activity, the "indeterminate" status of even a large percentage of the relevant events does not preclude plaintiffs from establishing an unlawful practice under <u>Monell</u>.  <u>Floyd</u> is also an example which shows that even where only a relatively small

---

[6]      *Floyd v. City of New York*, 08-cv-01034 (S.D.N.Y.), Second Amended Complaint, Docket No. 50 (Filed 10/20/08), ¶¶ 101, 103, 109-113, 116.

percentage (6%) of police actions clearly "lack legal justification," a unlawful custom may be shown.  Finally, <u>Floyd</u> shows that a <u>Monell</u> pleading is sufficient where it contains – as here – allegations stating the number of relevant events and the rate of positive and negative outcomes in a relevant unit of time.  The allegation that within 12 months, 2,235 out of 2,644 OWS protestor arrests (85%), were dismissed or declined to be prosecuted, is sufficient to plead an practice of unlawful arrests.  (Compl. ¶¶ 130-136).

Similarly, in <u>Stinson v. City of New York</u>, the court qualified a class of civilians whom had been issued summonses which were dismissed for lack of facial sufficiency.  These summonses, it was alleged, were issued pursuant to an unconstitutional quota policy.  Statistics submitted by the plaintiffs showed that over the period from 2004 through 2009, there were 3,597,964 summonses filed, of which 620,149, or 17.2% were dismissed.  *See Stinson v. City of New York*, 282 F.R.D. 360, 365-366 (S.D.N.Y. 2012).  The plaintiffs were permitted to proceed with the class action lawsuit.

Here, the complaint alleges that during the relevant period the District Attorney declined to prosecute 202 cases, or 7.5% of the total arrests.  Relying **only** on such cases (in which the District Attorney's office determines that probable cause was lacking)[7] the plaintiff shows a sufficient pattern to state a claim.  For comparison, as stated above the plaintiffs in <u>Floyd</u> demonstrated (at summary judgment) that 6 percent of stops lacked

---

[7]     According to the Office of the NYS Attorney General's report on stop and frisk arrests: "A district attorney's office generally interviews the arresting officer and—if it believes he evidence supports criminal charges—drafts the complaint upon which the defendant will be prosecuted. The office also performs a screening function: it determines whether the underlying stop or arrest was constitutional. If, for example, a district attorney determines that the arresting officer lacked reasonable suspicion to stop the defendant or probable cause to arrest, the district attorney has the authority to decline prosecution, or 'DP' the case." Schneiderman, Eric T, REPORT ON ARRESTS ARISING FROM THE NEW YORK CITY POLICE DEPARTMENT'S STOP-AND-FRISK PRACTICES, New York State Office of the Attorney General (Nov. 2013), available at https://www.ag.ny.gov/pdfs/OAG_REPORT_ON_SQF_PRACTICES_NOV_2013.pdf .

legal justification, while in <u>Stinson</u> the rate was 17.5%. *See Floyd*, 813 F. Supp. 2d at

447; *Stinson*, 282 F.R.D. at 365-366.

In addition, regarding these 2,200+ arrests which did not result in a conviction,

there is a legal presumption applicable to these arrests which the Court must take into

account at the pleading stage. As a matter of substantive New York State law, each arrest

which has not resulted in a conviction is *presumed* unlawful. "Whenever there has been

an arrest . . . without a warrant . . . the presumption arises that such an arrest [is]

unlawful." *Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975); *cert denied sub nom.*

*Schanbarger v. Kellogg*, 423 US 929 (1975). The Second Circuit has held that a legal

presumption "reduces the facts needed to be pleaded under *Iqbal*." *Littlejohn v. City of*

*New York*, 795 F.3d 297, 310 (2d Cir. N.Y. 2015) (referring to presumptions in the

McDonnell Douglas Title VII framework).

**F. The Complaint Provides Extensive Detail Concerning the Unlawful Practices**

In addition to the statistics demonstrating a pattern of unlawful arrests, the

complaint includes significant further detail concerning the unlawful police practices. In

addition to wrongfully arresting protestors, the complaint alleges practices of suddenly

closing sidewalks, "forcibly moving along peacefully assembled individuals," a

"difference in treatment between congested resident or tourist pedestrian traffic and

protester pedestrian traffic," and "consistent reports of police jabbing, hitting, and

swinging batons at protesters." (Compl. ¶¶ 143, 145, 156). All of the foregoing practices

can be seen in the facts of the plaintiff's arrest. (Compl. ¶¶ 2, 80).

A minority of the allegations in the complaint include citations to third party

sources, such as a study called SUPPRESSING PROTEST: HUMAN RIGHTS VIOLATIONS IN

THE U.S. RESPONSE TO OCCUPY WALL STREET (July 25, 2015).[8]  In <u>Marom</u>, the complaint

cited the same report, without actually incorporating any information from it.  Instead, the

pleading referred generically to "[t]he incidents discussed in the research…."[9]  The Court

interpreted this as a reference to the 130 incidents described in a chart at the end of the

report, and declined to treat this list of incidents as "presumed true" under Rule 8.

<u>Marom</u>, 2016 U.S. Dist. LEXIS 28466, *77.  Because the complaint in this case makes

different use of the report, the Court should take a different approach here.

      The Second Circuit has held that allegations do not lose the presumption of truth

merely because they cite to third party sources such as "newspaper articles and court

decisions."  *See Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 122, 124 (2d Cir. N.Y.

1991) ("evidentiary flaws in documents described in a pleading are not a basis for

dismissal for failure to state a claim").  This general rule continues in the <u>Twombly/Iqbal</u>

era.  *See Arista Records*, 604 F.3d at 119 (applying *Twombly* and *Iqbal*)).[10]  There is a

difference, however, in that the <u>Marom</u> complaint sought to reference an entire report of

195 pages, effectively presenting the Court with a pleading that exceeded 200 pages in

total.  In addition, the Court could not assume that Rule 11 "reasonable inquiry" had been

conducted to verify all 195 pages, nor identify a particular subset of the report which was

presented on such basis.  Here, however, the incorporation of specific allegations within

the complaint itself binds the plaintiff and counsel to those particular allegations.  Under

---

[8]     Produced by The Global Justice Clinic at NYU Law School and the Walter Leitner International Human Rights Clinic at Fordham Law School, published July 25, 2012, available at: http://chrgj.org/wp-content/uploads/2012/10/suppressingprotest.pdf.

[9]     *Marom v. The City of New York,* 15-cv-02017-PKC-SN, Docket No. 22 (Filed 07/21/15), ¶ 26.

[10]     "[T]he notion that *Twombly* imposed a heightened standard that requires a complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected the evidence is belied by the *Twombly* opinion itself."  *Id.*

Ricciuti and Arista Records, the incorporated allegations are entitled to the same treatment as other allegations in the complaint.

### G.  The NYPD's Failure to Train its Officers

The plaintiff's failure to train claim is that the City of New York and the Executive Defendants knew with moral certainty that NYPD officers would be called upon to police events like the September 17, 2012 OWS anniversary, and they failed to train these officers in legal principles which the officers needed to know in order to avoid unlawfully arresting protestors like the plaintiff.  Specifically, the police needed training in the meaning and application of the disorderly conduct statute, both in its own right and as applied to people engaged in protected speech.  While the NYPD trained its officers in many other things, it never provided this necessary training.

For example, NYPD officers are not trained that Penal Law 240.20(5) (blocking the sidewalk) requires more than inconveniencing pedestrians, and that its elements are not met even where the other pedestrians must step into the street to continue on their way.  This, however, is clearly established law.  In Papineau v. Parmley, the Second Circuit held: "New York courts have interpreted this statute to permit punishment **only** where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic."  *Papineau v. Parmley,* 465 F.3d 46, 59 (2nd Cir. 2006) (citing *People v. Pearl*, 66 Misc. 2d 502, 321 N.Y.S.2d 986, 987 (1st Dep't 1971)) (emphasis added).  The elements of 240.20(5) have not been met even where demonstrators block a sidewalk, "requiring [pedestrians] to enter the roadway to get to the other side," or "forc[ing] pedestrians out into the street."  *Papineau*, 465 F.3d at 59 (quoting *Pearl*, 66 Misc. 2d 502 and *People v. Nixon*, 248 N.Y. 182, 185, 187 (1928)).  After Papineau was decided, the New York Court of Appeals reaffirmed the principle once again: "Something more than a mere inconvenience of pedestrians is required to support the charge" of disorderly conduct.

*People v. Jones*, 9 N.Y.3d 259, 262 (2007) (dismissing charge).  In <u>Jones</u>, the New York Court of Appeals found a 240.20(5) charge to be facially defective where the arresting officer alleged that the defendants occupied the sidewalk so that "numerous pedestrians in the area had to walk around defendants."  *Jones*, 9 N.Y.3d at 261.

In addition, NYPD officers are not trained that the law requires any difference between the application of the disorderly conduct statute to protestors and to non-protestors.  This too is very clearly established law.  For example, in the First Amendment context, police may not arrest a protestors without a "clear and present danger of riot, disorder, interference with traffic upon the streets, or other immediate threat to public safety, peace, or order."  *Papineau*, 465 F.3d at 57 (emphasis added).  Unlike ordinary pedestrians, people engaged in First Amendment speech cannot be dispersed without providing an adequate alternative forum.  *See Marcavage v. City of New York*, 689 F.3d 98, 107 (2nd Cir. Nev. 2012).[11]

The defendants' first line of defense to this claim is to nitpick.  The word "additional" appears in paragraph 172 of the complaint, and the defendants construe this word to mean that every kind of training mentioned in the complaint was provided in some meaningful degree, so that the plaintiff is simply arguing about how much training should have been provided.  (Def. Memo. p. 22-23).  This reading of the complaint places more weight on one word than it can bear, especially considering that the Court must draw "all reasonable inferences in the plaintiff's favor" on a motion to dismiss.  *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 109 (2d Cir. N.Y. 2011).  And, because the defendants' interpretation of paragraph 172 is completely contrary to the true facts as I understand them to be, that word has been eliminated from the proposed amended

---

[11]    The Court should note that the defendants have not challenged the validity of the legal principles set forth in the complaint, and for the purposes of this motion have waived such arguments.

complaint.  The proposed amended complaint now incorporates significant additional specific allegations of a systematic failure to train.

The defendants' second line of defense is to obfuscate, arguing that training in disorder control formations in August 2011 was the same kind of training that the plaintiff alleges was lacking.  (Def. Memo. p. 23).  This is not the case.  The complaint alleges that the August 2011 training focused on "policing and formations to be used to splinter and control mass protest."  (Compl. ¶ 174).  In other words, this was training on how to round people up for arrest.  The training which the defendants should have provided, but did not, relates to whether arresting people is justified to begin with.

The defendants argue that the Supreme Court's decision in <u>Connick v. Thompson</u>, bars this claim, citing the Court's statement that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  <u>Connick</u> does not compel dismissal, and in fact militates against it.  First, unlike this case, <u>Connick</u> was analyzed as a "single-incident" case, a case in which the plaintiff had failed to show any previous similar violation: "We granted certiorari to decide whether a district attorney's office may be held liable under § 1983 for failure to train based on a single Brady violation."  *Id.* at 53.  The complaint in this case, on the other hand, alleges thousands of prior violations by police officers.

Secondly, the Court's discussion in <u>Connick</u> of what creates an "obvious" need for training favors the plaintiff, not the defendants.  The Court vacated the verdict for the plaintiff in large part because, in its view, the training district attorneys receive to enter the legal profession prepares them for most tasks they face, with the result that a

municipality cannot anticipate the need to provide further training. In describing its reasoning, the Court contrasted attorneys with police officers, whom the Court stated normally **require** training. The Court explained that "attorneys, unlike police officers, are equipped with the tools to find, interpret, and apply legal principles." *Id.* at 68-70. For police, however, "[i]n the absence of training, there is no way for novice officers to obtain the legal knowledge they require. " *Id.* at 63-64. Where the police will likely face a situation in which knowledge of constitutional limits will be required, "there is an obvious need for some form of training." *Id.*

The complaint establishes that situations like that of the plaintiffs arrest were foreseeable to a moral certainty. <u>Connick</u> teaches that for NYPD officers, "in the absence of training, there is no way … to obtain the legal knowledge they require" to correctly handle these circumstances. *Id.* at 63-64. Thus, pursuant to <u>Connick</u>, the need for training was "obvious." *Id.*

While it is not required at this stage to plead a specific deficiency in training, (*Okin*, 577 F.3d at 440-441 (citing *Amnesty Am*, 361 F.3d at 129)), the complaint does so when it describes the legal rules in paragraph 170: rules which the police need to know but do not know. To be clear, the complaint also alleges a broader failure to train police on how to respond to protests without violating protestors rights. The defendants have yet to state the basis for their probable cause defense. However, because the plaintiff was arrested while on a sidewalk and charged with disorderly conduct (Compl. ¶93), one can assume that the police will claim that he blocked the sidewalk (Penal law 240.20(5)). Training in the 1st, 2nd, 4th and 9th subpoints would have helped the defendants to recognize that the plaintiff's conduct did not violate 240.20(5). If the defendants persist

in arguing that an order to disperse was given, then training in subpoints 3, 7 and 8 would have helped avoid this wrongful arrest.  The 6th and 10th points would have helped the police understand whether an order to disperse was lawful as given, and the 1st, 2nd, 4th and 9th points would have helped them understand whether a basis for such an order existed.

The defendants cite numerous cases in the <u>Monell</u> section of their brief, but all are wildly dissimilar to the present case.  Most cases cited dismissed complaints where the entire <u>Monell</u> claim was less than 10 paragraphs, and which, like <u>Connick</u>, were cases where the <u>Monell</u> practice was supported only by the incident that involved the plaintiff (i.e., "single incident" cases): *Adams v. City of New Haven*, 2015 U.S. Dist. LEXIS 46061 (D. Conn. Apr. 8, 2015) (single incident case); *Gojcaj v. City of Danbury*, 2016 U.S. Dist. LEXIS 696 (D. Conn. Jan. 5, 2016) (single incident case); *Cruz v. City of New York*, 2016 U.S. Dist. LEXIS 6116 (S.D.N.Y. Jan. 19, 2016) (one paragraph Monell claim), [12] *Lozada v. City of New York*, 2013 U.S. Dist. LEXIS 105682 (E.D.N.Y. July 26, 2013) (five paragraph Monell claim, single incident case),[13] *Pizarro v. City of N.Y.*, 2015 U.S. Dist. LEXIS 131471 (E.D.N.Y. Sept. 29, 2015) (seven paragraph),[14] *Simms v. City of New York*, 2011 U.S. Dist. LEXIS 115949 (E.D.N.Y. Sept. 27, 2011) (five paragraphs, citing one prior incident),[15] *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 536 (S.D.N.Y. 2012) (single incident case).[16]  The remaining cases **denied** dismissal or were summary judgment motions: *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 544

---

[12]       *See Cruz v. City of New York, et al.*, 15-cv-02265-PAE (S.D.N.Y.), Docket No. 1 (Filed 03/26/15), paragraph 54.

[13]       *Lozada v. City of New york, et al.,* 12-cv-00038-ILG-JMA (E.D.N.Y.), Docket No. 1 (Filed 01/04/12).

[14]       Pizaro v City of New York, et al., 14-cv-00507-LDH-PK (E.D.N.Y.) Docket 1, (Filed 01/23/14).

[15]       *See Simms v. City of New York, et al.*, 10-cv-03420-NGG-RML (E.D.N.Y.), Docket No. 4 (Filed 10/18/10), ¶¶ 30-34).

[16]       *See Triano v. Town of Harrison*, 09-cv-06319-PED, Docket No. 37 (Filed 08/09/11).

(S.D.N.Y. 2015)  (denying motion to dismiss *Monell* claim); *Hart v. City of Binghamton*,

2012 U.S. Dist. LEXIS 61508 (N.D.N.Y May 2, 2012) (other lawsuits were insufficient

as evidence on motion for summary judgment); *Bertuglia v. City of New York*, 2015 U.S.

Dist. LEXIS 131008 (S.D.N.Y. Sept. 28, 2015) (motion for summary judgment).

The defendants have failed to establish that the plaintiff's Monell claim, as

originally pled, should be dismissed.  As expanded by the proposed amendments, the

complaint goes far beyond what is required to plausibly plead entitlement to relief.  The

defendants' motion should be denied.

## V. Liability of Executive Defendants

The defendants say little about the liability of the Executive Defendants.  This is

the entirely of the defendants' argument, but for a footnote:

> "Plaintiff has failed to include any of the so-called "Executive" or "Chief
> Defendants" -- namely, Bloomberg, Kelly, Esposito, Purtell, McNamara
> and Anger – in any of the foregoing claims. In addition, his final claim
> (addressed infra) is against the City pursuant to Monell v. Department of
> Soc. Serv., 436 U.S. 658 (1978). See Amended Complaint ¶¶ 125 et seq.
> (Fifth Claim for Relief).  Accordingly, all claims with respect to these six
> defendants must be dismissed.  (Def. Memo. p. 20).

And in the footnote:  "Plaintiff provides no allegations relating to these

defendants apart from his Monell allegations other than unadorned claims of their

supervisory responsibilities for the OWS anniversary 'celebration'" (citing Amended

Complaint ¶¶ 10-15).  In fact, paragraphs 173-224 provide detailed allegations

concerning each of the Executive Defendants.  Although these allegations appear within

the Monell portion of the Complaint, the complaint expressly states that "Each of the

defendants are sued in their **individual** and official capacities."  (Compl. ¶ 45).

Moreover, the nature of the allegations relating to the Executive Defendants maps to

individual capacity claims supervisory liability pursuant to Colon v. Coughlin, pursuant

to which supervisors can be liable for, among other things, creation of a policy or custom pursuant to which the plaintiff is harmed.  *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. N.Y. 2003) (stating elements) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  *See also Butler v. Suffolk County*, 289 F.R.D. 80, 95 (E.D.N.Y. 2013) (liability for the creation of a policy or custom survives Iqbal).

In their pre-motion letter, the defendants gave no indication that they intended to argue that the Executive Defendants were, in effect, not sued.  (*See* LETTER MOTION FOR CONFERENCE ADDRESSED TO JUDGE P. KEVIN CASTEL FROM ANDREW LUCAS dated 12/14/2015, Docket No. 47).  The Court should note that all such defendants had already been served when this letter was filed.  *See* docket nos. 35-42.  In this motion, the defendants deliberately overlook the substance of more than 45 paragraphs of allegations (Compl. ¶¶173-224), addressing it all in five lines of text and a footnote.  Because the defendants moved this Court for, and were granted, leave to file up to 30 pages in argument (and the defendants' brief is 26 pages), the Executive Defendants did not submit this extremely abbreviated argument because of page limits – they made a deliberate choice to avoid addressing this substance.  Having made this affirmative choice, the Executive Defendants cannot raise these arguments for the first time on reply.

Accordingly, this Court should dismiss the claims against the Executive Defendants **only** if the Court determines that the Complaint as a whole (and particularly paras. 45, 173-224) fails to place these defendants on notice that they are being sued in their individual capacities pursuant to Colon v. Coughlin.

## VI.    The Plaintiff's Claim for Excessive Force

This is not simply a case in which an arrestee was handcuffed, and nothing more. The plaintiff was struck with a baton, grabbed and dragged, pushed and shoved, and then handcuffed tightly in a way that aggravated a prior injury.  (Compl. ¶¶ 88-90, 96-97).  The defendants argue that because the plaintiff has not alleged long-term injury, his excessive force claim must be dismissed as a matter of law.  This is not the law in the Second Circuit, especially in light of the recent decision in Brown v. The City of New York.  *See Brown v. City of New York*, 798 F.3d 94 (2d Cir. N.Y. 2015).  There, the Second Circuit reversed summary judgment for the defendants on excessive force where evidence of injury was completely lacking, and remanded for a jury trial.

Brown involved a protestor who was resisting arrest.  She was brought to the ground and pepper sprayed at close range.  According to the plaintiff's 56.1 statement, she declined medical attention at Central Booking.  The plaintiff's 56.1 statement made no mention of any injuries.  Nevertheless, the Second Circuit held that the claim should be sent to a jury.  In so doing, it stated the factors that the jury should consider in deciding the excessive force claim, which were: "[the] non-threatening form of resistance … the minor nature of the disorderly conduct violation, the absence of actual or threatened harm to the officers, and the degree of force."  *Id*. at 103.  The absence of evidence of injury was not cited as a factor for the jury to consider in determining constitutional reasonableness of the force used.  Certainly, if there were a *per se* rule that without lasting injury there could be no claim, the Second Circuit would not have decided as it did.

This is entirely consistent with the Supreme Court's ruling in Graham v. Connor. There, the Supreme Court vacated a directed verdict for the defendants, in which the

district court had applied a four-factor test to determine if the force was reasonable, including: "… (3) the extent of the injury inflicted…." *Graham v. Connor*, 490 U.S. 386, 390 (1989).  The Supreme Court replaced this test with its own three-part test, directing consideration of: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 393.  In the Supreme Court's test, "the extent of the injury inflicted" was **eliminated** as a factor.

The Second Circuit's decision in Brown is also consistent with its own prior precedent, dating back to just after Graham was decided.  In Calamia v. New York, decided in 1989 just after Graham, the Second Circuit held that pushing an arrestee to the floor and leaving him there in tight handcuffs for an extended period of time, causing pain for five or six hours, "sufficed to warrant submission of this claim to the jury." *Calamia v. New York*, 879 F.2d 1025, 1035 (2d Cir. N.Y. 1989).  And more recently, the Second Circuit affirmed a jury verdict for a plaintiff whose arm was twisted and who was shoved into a wall, while being arrested for disorderly conduct.  *Weather v. City of Mt. Vernon*, 474 Fed. Appx. 821, 823 (2d Cir. N.Y. 2012).  The Second Circuit analyzed the case under the three Graham Factors, without any reference to the presence or absence of injury.

In part because a claim for excessive force can be sustained even where probable cause existed for arrest, courts are understandably hesitant to approve claims at the lower end of the scale of harm.  On the other hand, police can (and do) take advantage of the fact that the legal system tends to discount claims of (for example) handcuff injury standing alone.  For certain police, intentionally tightening handcuffs to the point of

causing severe pain has become a "freebie" – a kind of cruelty that can be inflicted with certainty that no consequences will result.  This kind of unprofessionalism is surely not desirable.  While the Second Circuit in <u>Brown</u> did not address a standalone handcuff claim, it did rule that claims at the lower end of the scale of harm should not be lightly dismissed.  It rejected a *per se* rule that there can be no claim without evidence of injury. In this case, because false arrest claims against the officers who used excessive  force on the plaintiff will survive this motion, there is no policy reason to absolve these defendants for the use of significant force against someone who was – at worst – standing in the wrong place on the sidewalk.[17]

For the foregoing reasons, the defendants' motion should be denied in its entirely. In addition, the Court respectfully requests that, pursuant to the Court's Order of 2/26/2016, the Court grant leave to file the proposed amended complaint.

Dated:          New York, N.Y.
                March 23, 2015

                                        _____//s//_____
                                        David Thompson [dt3991]
                                        Stecklow & Thompson
                                        217 Centre Street, 6th Floor
                                        New York, NY 10013
                                        Phone:  (212) 566-8000
                                        Fax:     (212) 202-4952
                                        Email: dave@sctlaw.nyc

---

[17]     As the Second Circuit in <u>Weather</u> said: "Even if [the plaintiff] were engaged in disorderly conduct, the latter is not even a crime in New York state, but a non-criminal violation." *Weather*, 474 Fed. Appx. 823.